## STATE v. CASTELLO.

1. **Evidence:** CREDIBILITY OF WITNESS AS AFFECTED BY INTOXICA- TION. While the intoxication of a witness at the time of the transac- tions of which he testifies does not destroy his credibility, it undoubtedly impairs it; but if his testimony is corroborated, or his recollection of the transaction appears to be distinct and clear, he is entitled to belief.

2. **Instructions:** REFUSAL TO GRANT: NO PREJUDICE. There is no error in refusing instructions asked, when, in view of the instructions given, they are not necessary to guide the jury in the proper determina- tion of the case.

3. **Manslaughter:** INTENTION OF DEFENDANT: INSTRUCTION. Upon an indictment for murder, the defendant asked the court to instruct the jury that his intentions in approaching the deceased must be presumed to be lawful, unless shown to be unlawful, and the court refused to give the instruction. *Held* that, if there was error in the ruling, it was cured by a verdict for manslaughter only, which did not imply any unlawful intention in approaching the deceased.

4. **Homicide:** NOT PALLIATED BY FEEBLENESS OF DECEASED. A homicide cannot be excused or palliated on the ground that the manslayer was ignorant of the fact that his victim's feeble condition was such as to render him unable to resist or survive the violence inflicted.

5. ———: SELF-DEFENSE: INSTRUCTION. There is no error in an instruction which, in effect, directs the jury that a homicide will be excused, where it appeared necessary to the accused, as an ordinarily prudent man, to take the life of the deceased in his own self-defense.

6. **Manslaughter:** DEFINITION OF: SELF-DEFENSE. Self-defense excuses homicide; it has nothing to do in determining its degree. Hence it has no place in the definition of manslaughter, or of any other degree of homicide.

*Appeal from Henry District Court.*

Tuesday, December 11.

The defendant was convicted of manslaughter, and sentenced to imprisonment in the penitentiary for three years. He now appeals to this court. The facts of the case are stated in the opinion.

*Woolson & Babb*, for appellant.

*Smith McPherson*, Attorney-general, for the State.

Beck, J.—I. The deceased, one Salberg, and a comrade, having been drinking together, were, at the time of the occurrences resulting in the homicide, in an intoxicated condition. The maudlin actions of the deceased provoked taunts of derision from three young men, or boys, as they are called in the testimony, who were near by, which excited his anger and resentment. He ran towards them, climbing over an intervening fence, threatening them or inviting them to

State v. Castello.

fight. One of the young men, defendant, approached the deceased, and a conflict ensued. The preponderance of the evidence is to the effect that defendant struck the first blow. No weapons were used by defendant. He struck the deceased two or three times, who, before the last blow, turned away and fled to the fence. The last blow was given him when he was at the fence. These blows were with the fist, and were all received by deceased about the temple and side of the head. The defendant's evidence is to the effect that the deceased, before the blows, had taken from the ground a stone. But we are satisfied that the preponderance of the evidence fails to show that he used it or attempted to use it. Immediately after the last blow the deceased fell, and was soon dead. He is shown by the evidence to have been a man of feeble, though of rather large, frame. A *post mortem* examination revealed the facts that he was far gone with consumption, and that there were extravasations of blood in the brain. There were two or three contusions discovered upon the side of the head. The testimony authorized the conclusion that death resulted from the rupturing of a blood vessel of the brain.

II. This statement of facts is sufficient to introduce the consideration of the alleged errors complained of by defendant, which all relate to the instructions given to the jury.

1. EVIDENCE: credibility of witness as affected by intoxication.

The comrade of the deceased, named Clowson, who was a witness for the state, was shown to be in an intoxicated condition at the time of the fight, and admitted it in his own testimony, which was reasonably clear and direct. He testified in effect that he had a distinct recollection of the affair. In directing the jury as to the effect of the witness' condition upon his credibility, the court used the following language:

"The fact that a witness present at the death of Salberg, and testifying as to facts, was under the influence of liquor to any extent, does not affect his credibility, if you find that, at

the time he was testifying, he distinctly remembered the facts as they occurred. It is the truth that the law seeks, and the condition of the witness is immaterial, except as a means of determininig his ability and desire to know and tell the truth. And, if the witness now remembers the facts, and you believe he tells them truthfully, it does not matter what was his condition then."

We think the instruction is correct. It does not follow that the capacity of observation and the powers of memory are destroyed by intoxication, which is not to the degree producing stupor. While it must be admitted that intoxication does not destroy credibility, it undoubtedly impairs it. But, if the evidence of one who was intoxicated at the time of the occurrences of which he testifies is corroborated, or his recollection of the transactions appears to be distinct and clear, he is entitled to belief. This is the purport of the instruction just quoted. The district court gave to the jury other proper directions applicable to the case, which enabled the jury to determine the weight to be given to Clowson's evidence.

III. The defendant asked an instruction, the refusal of which is now made the ground of complaint, which does not

2. INSTRUC- present a rule materially different from the in-
TIONS :refus- struction above quoted. Another instruction
al to grant:
no prejudice. refused contains directions as to the effect of the contradictions to Clowson's evidence by other witnesses in discrediting it. The instructions given in effect directed the jury to extract the truth from all the testimony, and to reject such part of it as appeared to be erroneous. The jury would certainly understand that they should find the facts to accord with the preponderance of the proof. The instruction in question was not demanded to guide them to this result.

IV. The defendant requested the court to instruct the jury that defendant's intentions in approaching the deceased

3. MAN- must be presumed to have been lawful, unless
SLAUGHTER:
intentions of shown to have been unlawful. The instruction
defendant :
instruction. is immaterial in view of the verdict for man-

slaughter. Whatever may have been the intention of defendant in approaching deceased at the time of the conflict, if they were in fact lawful and peaceable, they would not excuse the unlawful homicide resulting from violence occurring after they came together. It may be that, had the verdict been for a homicide of a higher degree, prejudice from the refusal to give the instructiion might have resulted.

V. The defendant requested the court to instruct the jury that they must be satisfied beyond a reasonable doubt that death resulted from the blows inflicted by defendant, to authorize them to convict. And another

SAME AS NO. 2.

instruction asked was to the effect that, if there were two theories in relation to the cause of death, one consistent with innocence and the other with guilt, and each equally in harmony with the evidence, the jury should adopt the theory of defendant's innocence. The thoughts of these instructions, so far as they should have been presented to the jury, are expressed in an instruction given, announcing the rule of reasonable doubt. The jury would not have failed to entertain such a doubt, had the evidence, upon the points contemplated by these instructions, been of the character stated therein.

VI. An instruction asked by defendant was to the effect that, if, on account of the diseased condition of Salberg, a blow of less force caused his death than would have been required to take the life of a healthy man, the defendant cannot be held guilty, unless

4. HOMICIDE not palliated by feebleness of deceased.

he knew of the true condition of the health of deceased. The instruction was properly refused, and the jury were informed, in substance, that the condition of Salberg's health would not excuse defendant. Surely, it cannot be claimed that a homicide may be excused on the ground that the manslayer was ignorant of the fact that his victim's feeble condition was not such as to enable him to resist the violence.

VII. An instruction upon the doctrine of self-defense is

understood by counsel to mean that homicide can only be
**5. ——: self-** excused when it is reasonably necessary to take
**defense: in-**
**struction.**      life for the defense of the accused. But the
whole instruction unmistakably conveys the thought that, if
such necessity appear to the accused, or would appear to an
ordinarily prudent man, it is sufficient.

VIII. Counsel for the defendant insist that an instruction
defining the crime of manslaughter leaves out of view the
**6. MAN-**        question of self-defense as an excuse for the hom-
**SLAUGHTER:**
**definition of:**  icide. Self-defense excuses a homicide; it does
**self-defense.**
not indicate its degree. If it is established, there can be no
conviction for the offense in any degree. Hence it has no
place in the definition of manslaughter, or any other degree
of homicide. The nature of the defense, and the evidence
necessary to support it, were stated in other instructions.
The court was not required to repeat them in connection with
the definitions of the different degrees of crime arising from
the killing of a human being.

IX. While the evidence in some degree is conflicting, it
sufficiently supports the verdict.

We have considered all the points discussed by counsel,
and reach the conclusion that the judgment of the district
court ought to be

AFFIRMED.