## DARBY *vs.* THE STATE OF GEORGIA.

1. In this case, the dying declarations introduced in evidence were shown to have been made while the person slain was in *articulo mortis*, and after he had been advised by his physician that he must die. They related to the cause of his death and were admissible, though they might have been omitted without affecting the result.

2. It was admissible to show that, in such dying declarations, the deceased said that the defendant had cut him, and that he had done nothing to cause it. This was not a conclusion, but a fact.

3. There was no error in charging the jury as follows: "Were the circumstances surrounding Darby at that time such, or not? Look and see what they were; where they were standing when they first met; what they were doing. Did they draw their knives, and did they attempt to use their knives? Did they keep their knives open and walk down the street, or did one shut up his knife and the other keep his open? At the time of the cutting, were the circumstances which surrounded Darby sufficient to excite the fears of a reasonable man?"

4. Under the facts of this case, there was no error in charging as follows: "At the time of the cutting, were the circumstances which surrounded Darby at the time sufficient to excite the fears of a reasonable man? Were they sufficient to make him believe, and did he believe, that this man was going to cut him, and did it appear that the danger was so urgent and pressing at the time of the killing that, in order to save his own life, the killing of the other was absolutely necessary?"

5. When construed with the entire charge, there was no error in charging as follows: "The law does not require the State to make out a case to a mathematical certainty, because it is rarely ever done by human testimony. The law requires the State to furnish such evidence as would satisfy the minds of the jury; but if the State proves it so that they are morally satisfied in their minds, that is sufficient. If you are morally satisfied in your minds, from the evidence in the case, that Darby is guilty of the crime charged in the indictment, then it would be your duty to so find"; the court having charged the jury that, "in civil cases, moral certainty may be produced by a preponderance of the evidence, but in criminal cases, much stronger conviction is necessary; and the evidence should be so strong as to exclude from the minds of the jury every reasonable doubt as to the guilt of the accused."

6. There was no error in charging as follows: "If you believe that Darby killed Rittenberry without intending to kill him, but that it was done in the commission of an unlawful act which, in its

consequences, naturally tends to destroy the life of a human-being, then the offence would be murder." This charge might have been omitted, as the case was not one of involuntary manslaughter but of murder, under the evidence produced by the State; but the charge did no harm.

7. Nor was there error in charging as follows: "If you believe from the evidence that Darby cut Rittenberry on account of threats, and that it naturally tended to cause death, that would be an unlawful act on the part of Darby; and if death ensued, it would be murder, whether Darby intended to kill Rittenberry or not."

8. The entire charge was fair, impartial and applicable to the case. The court having charged that the jury could believe the defendant's statement or not, as they thought proper; that they could give it full credit, and might believe it to the exclusion of all the testimony in the case, if they thought proper, it was not the duty of the court to give in charge any theory of the case which arose, not from the evidence, but from the defendant's statement.

9. Where one ground of a motion for a new trial was, that one of the counsel for the accused was unwell at the time of the trial and neglected to put in some evidence in the case, and that on account of his ill-health and irritability he would not allow associate counsel to control the case, and that in a few days after the trial he died, but the court certified that counsel's mind was perfectly clear and he was at himself, this furnishes no ground for reversing the refusal of a new trial; especially where the omitted testimony could not have changed the result.

10. The verdict is right under the law and evidence.

April 27, 1887.

Criminal Law. Dying Declarations. Murder. Charge of Court. Attorney and Client. Verdict. Before Judge SIMMONS. Bibb Superior Court. October Term, 1886.

Reported in the decision.

J. G. BLOUNT; HARDEMAN & DAVIS, for plaintiff in error.

CLIFFORD ANDERSON, attorney-general; JOHN L. HARDEMAN, solicitor-general, for the State.

BLANDFORD, Justice.

Darby was indicted for murder in the superior court of Bibb county, and was tried, found guilty, and sentenced

to imprisonment for life in the State penitentiary, the jury having so recommended. He made a motion for new trial on various grounds, which the court overruled; and he excepts to that judgment and assigns the same as error

1. The first objection is, that the court erred in admitting the testimony of Anna Rittenberry, that her husband, James Rittenberry, the deceased, stated that the cause of his death was a wound in the bowels. It appears from the record that there was no objection to the testimony, certified by the judge. The testimony was admitted on the ground that this was a dying declaration of the deceased. It was shown by the evidence that he was *in articulo mortis* when he made this declaration, and that he had been advised by his physician that he must die. But this testimony could not have affected the result in this case; for the uncontradicted testimony of the three witnesses who saw the homicide makes out a clear and unqualified case of murder. According to the testimony of these witnesses, the deceased and the defendant were engaged in a quarrel; the defendant was heard to say, "You damned son of a bitch, you have not paid that account"; and thereupon they both pulled out their knives; some other altercation took place, and the deceased said to the defendant, "Let's go and see him about it"; the deceased shut up his knife and put it in his pocket, and they walked on, the defendant having his knife in his hand; after going a short distance, defendant struck the deceased with his fist, and immediately stabbed him with the knife; and this produced his death. There is no testimony to the contrary of this; there is nothing in the record that justifies even a suspicion of its falsity in any particular whatever. So we do not think that the testimony objected to in this ground of the motion should be considered as material. But whether material or not, it was properly admitted under the law, it having been shown that it was a dying declaration.

2. The defendant also objected to the admission of testi-

v 79-5

mony that the deceased said that the defendant cut him and that he had done nothing to cause it. It was objected that this was a conclusion. It seems to us that it was a question of fact whether he did anything or not. It is an every-day occurrence to ask witnesses in court what the parties did, and for the reply to be made that one of the parties did a certain thing and the other did nothing. We do not think there is anything in that ground.

3. The next ground of objection is, "Because the court erred in the following charge to the jury : 'Were the circumstances surrounding Darby at that time such or not ? Look and see what they were, where they were standing when they first met, what they were doing. Did they draw their knives and did they attempt to use their knives ? Did they keep their knives open and walk down the street, or did one shut up his knife and the other keep his open ? At the time of the cutting were the circumstances which surrounded Darby sufficient to excite the fears of a reasonable man ?' " We see no error in that charge of the court. It called the attention of the jury to the particular circumstances which surrounded the accused at the time the cutting was done, and this was proper.

4. The next ground is that the court erred in the following charge : " At the time of the cutting, were the circumstances which surrounded Darby at the time sufficient to excite the fears of a reasonable man ? Were they sufficient to make him believe, and did he believe, that this man was going to cut him, and did it appear that the danger was so urgent and pressing at the time of the killing that, in order to save his own life, the killing of the other was absolutely necessary ?" In view of the facts in this record there was nothing wrong in that charge. These facts are uncontradicted. It appears that Darby was as willing to go into the difficulty as Rittenberry, the deceased; and more so. Indeed, the testimony shows that he gave the first offence, that he was the assailant, that he said to the deceased, " You damned son of a bitch, you

have not paid that account." That was the first insult. And after they went off together, and the deceased had shut his knife and put it in his pocket, the defendant kept his in his hand, open; and then struck the deceased with his fist and cut him with the knife. Indeed, this charge is more favorable to the accused than he had any right to expect; because the court gave in charge a section of the code that applies to justifiable homicide, that is to say, homicide in defence of one's person. But this is not that kind of case. In order to make out homicide *se defen-dendo*, that kind of justifiable homicide, it must appear that the danger was so urgent and pressing at the time the mortal blow was given, that it was absolutely necessary for him to kill in order to save his own life. No such case appears here. It was a plain, bald case of murder, and we think the court would have been perfectly justifiable in not charging anything on the subject of justifiable homicide.

5. The next ground of objection is, that the court erred in charging that "The law does not require the State to make out a case to a mathematical certainty, because it is rarely ever done by human testimony. The law requires the State to furnish such evidence as would satisfy the minds of the jury; but if the State proves it so that they are morally satisfied in their minds, that is sufficient; if you are morally satisfied in you minds, from the evidence in the case, that Darby is guilty of the crime charged in the in-dictment, then it would be your duty to so find." Take this portion of the charge, and construe it with reference to the entire charge and that portion which immediately preceeded it, and there is no error in it. For the court charged the jury that, "in civil cases, moral certainty may be produced by a preponderance of the evidence; but in criminal cases, much stronger conviction is necessary, and the evidence should be so strong as to exclude from the minds of the jury every reasonable doubt as to the guilt of the accused." Taking this part of the charge,

which immediately preceded the portion complained of, it. was impossible for the jury to have misunderstood the court. Construing this together, the court meant to tell the jury, "You must be satisfied of the guilt of the accused, beyond a reasonable doubt before you can convict"; and that is doubtless the way the jury understood it at the time.

6. Another ground of the motion is, that the court erred. in the following charge, given at the request of the solicitor-general, at the end of the general charge: "If you believe that Darby killed Rittenberry without intending, to kill him, but that it was done in the commission of an unlawful act which in its consequences naturally tends to destroy the life of a human being, then the offence would. be murder." That is a correct proposition of law. The. solicitor-general, however, might very well have omitted; this. This is not a case of involuntary manslaughter, under the evidence produced by the State; it is a case of murder; and this charge did no good and no harm.

7. The next ground is, that the court erred in charging: "If you believe from the evidence that Darby cut Rittenberry on account of threats, and that it naturally tended. to cause death, that would be an unlawful act on the part. of Darby; and if death ensued, it would be murder, whether Darby intended to kill Rittenberry or not." That is a correct proposition of law, but has very little to do with this case.

8. The next ground is, "that the entire charge is not fair to the defendant, nor is it a fair presentation of the issues presented to the jury, in the following particulars," and the particulars are enumerated. We have looked through this charge very carefully. It is a very able charge. The, law was given as applicable to the facts of the case, fairly and impartially. It is a perpendicular charge; the court leaned neither to one side nor the other; and he gave the accused the full measure of his rights. True, it may not be regarded as a fair presentation of the case as made by

the statement of the accused; but the statement of the accused is not testimony.   The court could not be required to charge the jury upon the statement of the accused. That is declared by the law not to be evidence; the jury were told that they could believe it or not, as they thought proper; they could give it full credit; they might believe it to the exclusion of all the testimony in the case, if they thought proper, but it was not evidence; and the court was not required to give in charge to the jury any theory of the case which arose from the defendant's statement.

9. Another ground was that Mr. Jemison, who was counsel for the accused, was unwell at the time of the trial, and neglected to put in some evidence in the case, and that on account of his ill health and irritability, he would not allow associate counsel to control the case, and that in a few days after the trial he died.   The court certified that Mr. Jemison's mind was perfectly clear and that he was at himself.   We cannot relieve the accused under circumstances of this kind.   He selected Mr. Jemison as a lawyer; he was his leading counsel; he relied upon him; and the court says his mind was perfectly clear; and whether he was a man of as great ability as other counsel might have been, cannot avail the defendant here; if he employed counsel who conducted his case in such manner as to lead to his conviction, that is his misfortune, for which he alone must be responsible.   But I do not think that the testimony which it is said Mr. Jemison failed to introduce, would or should have changed the result in this case.   No lawyer, in my judgment, however great his ability, could have produced a different result with an honest, fair-minded jury, under the evidence in this case.

10. Another ground is that the verdict is contrary to law and evidence.   It is unnecessary to say anything further by way of reference to this ground.   I have substantially stated the testimony; and the verdict is right, under the law and the evidence.

Judgment affirmed.