## 22591. WELLS *v.* THE STATE.

Decided January 25, 1933. Rehearing denied February 10, 1933.

*J. A. McFarland, D. W. Mitchell, H. A. Allen,* for plaintiff in error.

*John C. Mitchell, solicitor-general,* contra.

MacIntyre, J. The indictment in this case contains three counts, each charging M. A. Wells and Fred Killian with involuntary manslaughter. Wells was convicted under the second count of the indictment, which charges involuntary manslaughter in the commission of an unlawful act. His exception is to the judgment overruling his motion for a new trial containing the general and two special grounds. In *Wells* v. *State,* 44 *Ga. App.* 760 (162 S. E. 835), the indictment was held good against demurrer.

The gist of the State's case is: that on June 30, 1931, Wells and Killian were employees of the State highway department, with authority "to detain the convicts and keep them from escaping, and to keep them on the job;" that Thomas Farmer had been working at convict camp No. 3, on the Dalton and Cleveland road, for about a week prior to his death on June 30, 1931; that two days after arriving at camp Farmer "gave out" while at work; that on June 30, 1931, it was very warm—"hot enough to kill anybody;" that on said date Farmer suddenly fell backwards from the "wheeler" he was driving; that Wells and Killian had Farmer to get up and walk about forty feet to a telephone pole, and handcuffed him thereto, with his hands behind him and his back to the pole; that within about eight or ten minutes Farmer slumped down the pole, "with his head in a stooped position," apparently unconscious; that it was about one o'clock in the afternoon and the weather was extremely hot, especially in the sun where Farmer was bound; that in a few minutes Wells and Killian released Farmer from the pole and carried him on a truck to camp, a distance of about a quarter of a mile from said pole; that when Dr. J. G. McAfee, the doctor at the camp, arrived upon the scene a few minutes after Farmer reached camp, Farmer's lungs were about filled with blood, his breath was coming with great difficulty, and he appeared to be in a state of coma; that within about twenty minutes of the doctor's arrival Farmer died without regaining consciousness; and that there were trees a short distance from where Farmer was bound to said post, and that he could easily have been placed in the shade instead of in the sun.

We quote briefly from the testimony of Dr. McAfee as follows:

"If a person becomes overheated, the best treatment to prevent a sunstroke is for him to stay out of the heat. . . This was rather a hot day, in fact exceedingly hot. . . My diagnosis was that he died from sunstroke. . . I could not say positively that the effect of fastening him there in that position, under these conditions, actually brought about the sunstroke. . . I would readily say that it was not the treatment to give a man in that condition."

Special ground 1 contains five pages of questions, answers, and objections. However, the main contention appears to be that the court erred in allowing the State's witness, W. J. Wrinkle, to testify as follows: "Mr. Wells said that Dr. McAfee knew what high blood pressure and heart trouble was, but that he could cure it quicker than the doctor could." The objection to the testimony was that it was irrelevant, for the reason that it did not appear that the defendant's remarks had any connection with Farmer. It appears from this ground that the witness Wrinkle testified that the statement attributed by him to the defendant was made "the next morning after Farmer fell out the first time," and during a conversation concerning that circumstance. We are of the opinion that the court properly admitted the testimony, and properly permitted the jury to construe it. Neither is there any merit in the insistence in this same ground that the court committed reversible error in propounding to the witness Wrinkle certain questions in regard to the circumstances under which the defendant made the statement attributed to him by Wrinkle.

It is contended under both the general grounds and ground 2 of the amendment to the motion for a new trial that "there was no evidence adduced upon the trial to show that the act of handcuffing said deceased was the proximate cause of his death," and that this contention is necessarily valid because Dr. McAfee, "the only witness who undertook to swear anything about the cause of the death of the deceased," refused to testify "whether or not the handcuffing to the post was the direct and proximate cause of his death."

As a prelude to a discussion of the precise question indicated above, we will say that the defendant introduced no evidence, and that the venue of the alleged crime was proved. The gist of the defendant's statement to the jury was that when Farmer fell from the wheeler, the defendant "turned the boy over to Fred" (Killian) and immediately started to get his truck to carry Farmer to the

doctor; that his attention was called to a mistake in the grade, and he stopped "something like five or ten minutes" to help straighten it out; that "about that time" some one called his attention to Farmer, and he had the handcuffs unlocked and proceeded quickly to get his truck and carry Farmer to camp.

Dr. McAfee's final response to the question as to what caused Farmer's death was as follows: "I told Mr. Allen on cross-examination that I can not give it as my positive opinion that the chaining of this young man to the post would bring about the sunstroke. It would contribute to it. I would not say that that conduct would bring it about. No doctor can state positively what brings about anything." We will state in this connection that there was evidence that Farmer was a splendid specimen of young manhood, and that, so far as the record discloses, he had no physical trouble other than that caused by being overheated a few days previous to the day of his death. While the doctor's statements were somewhat guarded, it occurs to us that the jury were warranted in concluding that it was the doctor's expert opinion that the defendant's conduct contributed to Farmer's death. With reference to prior causes, 29 C. J. p. 1082, § 57, says: "If the deceased was in feeble health and died from the combined effects of the injury and of his disease, or if the injury accelerated the death from the disease, he who inflicted the injury is liable, although the injury alone would not have been fatal. The same rule applies, although the disease itself would probably have been fatal, if the injury accelerated death. It is immaterial that the defendant did not know that the deceased was in the feeble condition which facilitated the killing, or that he did not reasonably anticipate that his act would cause death. But if the death was solely due to disease and was not caused or hastened by the injury, defendant is not liable." In the case of Commonwealth v. Fox, 73 Mass. 585, the indictment charged defendant with murdering his wife by assaulting and beating her, throwing her down upon the floor, and with his hands and feet striking, kicking, and bruising her. The evidence tended to show that the wife at the time of the assault was suffering with lung fever, of which she most probably would have died in a short time if the assault had not been committed, but that the assault committed by the defendant hastened her death. The judge charged the jury in part: "If you are satisfied on the evidence that an as-

sault and battery were committed on the deceased by the prisoner with his hands and feet in the manner alleged in the indictment, and that thereby the death of the wife was hastened by reason of the assault and battery so that it took place sooner by reason of the assault and battery than it would have occurred in consequence of her sickness, in such a case the assault and battery were the efficient cause of her death. . . In the present case, therefore, if the evidence satisfies the jury that the prisoner at the time he committed the assault and battery on the deceased, knew or had reasonable cause to believe that she was sick and suffering from disease and was thereby put in such a weak and feeble condition that his attack would endanger her life . . or hasten her death, it would justify the jury in finding implied malice and convicting the prisoner of murder. But if he was not aware of her sickness, and had no reason to suppose that his acts would do her injury or any harm beyond that which would be occasioned by similar acts upon a person in health, there would be no sufficient evidence of implied malice; and although the acts of the prisoner hastened the death of his wife, he could be convicted of manslaughter only." The conviction of the defendant for manslaughter was affirmed. In the case of State *v.* Castello, 62 Iowa, 404, the evidence tended to show that deceased was a feeble man though of large frame; that defendant struck the first blow; that no weapons were used; that defendant struck deceased two or three times with his fist. A post mortem examination revealed the fact that deceased was far gone with consumption and that there were extravasations of blood in the brain. The court in that case said: "Surely, it can not be claimed that a homicide may be excused on the ground that the manslayer was ignorant of the fact that his victim's feeble condition was not such as to enable him to resist the violence." The defendant was convicted of manslaughter and the verdict was affirmed. In State *v.* Mathews, 38 La. 795, 797, Judge Fenner said: "In a certain sense, every man is born and lives, mortally wounded; that is, subject to laws which inevitably doom him to death. No murder does more than to hasten the termination of life." In cases where the deceased was suffering from disease prior to the injury, we think 2 Bishop on Criminal Law (New), § 638 (3), lays down the correct rule as follows: "If the one attacked was enfeebled by disease, and what was done would not have been mortal to a well person, still, whether the assaulting

person knew his condition or not, if he did what was mortal to the other the offense is committed."

. The jury in the case at bar were authorized to find, under the evidence and the defendant's statement, that the defendant was guilty of an assault and battery upon the deceased, and that as a result of said assault and battery his said acts contributed to and accelerated the death of Farmer, and were the proximate cause thereof, without any intention so to kill. See, in this connection, *O'Connor* v. *State*, 64 *Ga.* 125 (37 Am. R. 58) ; *Thornton* v. *State*, 107 *Ga.* 683, 688 (33 S. E. 673) ; *Clements* v. *State*, 141 *Ga.* 667 (81 S. E. 1117) ; *Perdue* v. *State*, 135 *Ga.* 277 (69 S. E. 184).

Judgment affirmed. *Broyles, C. J., and Guerry, J., concur.*