WILSON *v.* THE STATE.

No. 13406. SEPTEMBER 26, 1940.

*Thomas A. Jacobs Jr.,* for plaintiff in error.

*Ellis G. Arnall, attorney-general, Charles H. Garrett, solicitor-general, E. J. Clower* and *C. E. Gregory Jr.,* contra.

JENKINS, Justice. 1. The indictment for murder charged the offense in the language of the statute, and described instruments, including a hatchet used by the defendant in inflicting the alleged homicide, as being such as would likely produce death, and from the use of which death resulted. The indictment was not subject to demurrer on the grounds that it did not more particularly describe the weapon, or the character and manner of its use in the

assault, or anticipate evidence which might be offered by the defendant as to the time intervening before death occurred. Nor was it necessary for the indictment to anticipate and negative testimony which might be offered by the defendant as to other independent causes of death. Code, § 27-701; *Hall* v. *State,* 133 *Ga.* 177 (65 S. E. 400); *Bowens* v. *State,* 106 *Ga.* 760 (32 S. E. 666); *Walker* v. *State,* 124 *Ga.* 440 (52 S. E. 738).

2. Where one inflicts an unlawful injury, such injury is to be accounted as the efficient, proximate cause of the death, whenever it shall be made to appear, either that (1) the injury itself constituted the sole proximate cause of the death; or that (2) the injury directly and materially contributed to the happening of a subsequent accruing immediate cause of the death; or that (3) the injury materially accelerated the death, although proximately occasioned by a pre-existing cause. In this case, while the expert testimony indicated that the immediate cause of death was an infected condition and gangrenous abscess of the lung, these witnesses also testified that such final condition was brought about by the fracture and described mutilation of the decedent's skull, from which she had been continuously confined to bed since the time the injuries had been inflicted with a hatchet. *Clements* v. *State,* 141 *Ga.* 667 (1, 4), 669 (81 S. E. 1117), and cit.; *Wells* v. *State,* 46 *Ga. App.* 412, 417 (167 S. E. 709); *Nelson* v. *State,* 58 *Ga. App.* 243 (198 S. E. 305); Notes in 51 L. R. A. (N. S.) 877, 879, and cit.; 26 Am. Jur. 189-195 (§§ 45-53); 29 C. J. 1077-1083 (§§ 54-58); Bishop's Crim. L. (9th ed.), 480-485 (§§ 636-641); Wharton on Homicide (3d ed.), 38, 39 (§ 34). The instructions of the court as to the causal connection between the wounds and death were in essential accord with the preceding rules, and were full and fair to the defendant.

3. "Where character is put in issue, the direct examination must relate to general reputation, good or bad, as the case may be;" and "particular transactions, or statements of single individuals," can not be brought into the inquiry except on cross-examination, "in testing the extent and foundation of the witness's knowledge and the correctness of his testimony on direct examination." *May* v. *State,* 185 *Ga.* 335, 339 (195 S. E. 196); *Moulder* v. *State,* 9 *Ga. App.* 438 (71 S. E. 682). Nothing to the contrary was held in *Powell* v. *State,* 101 *Ga.* 9 (1, *a*) (29 S. E. 309), 65 Am. St. R.

277), where this rule was recognized. Therefore the court did not err in excluding testimony by the mother of the defendant, on direct examination, that he "had never been in trouble prior to the time that he and . . the deceased had their trouble."

4. A self-serving declaration by the defendant, in a conversation with a police officer at the time of his arrest three years after the alleged homicide, in which the defendant said that while he struck the deceased with a hatchet he did so because she was assaulting him with an ice-pick, was not admissible on the theory that it was in rebuttal of testimony by a brother of the deceased, that about the time of such conversation the defendant admitted to him the striking of the deceased and made no explanation, since the two transactions were separate, and the brother was not present at the conversation with the police officer, and the officer was not present at the conversation with the brother. See *L. & N. R. Co.* v. *Varner*, 129 *Ga.* 844-846 (60 S. E. 162); *Myers* v. *State*, 97 *Ga.* 76 (9) (25 S. E. 252).

5. The court did not err in admitting a hypothetical question asked by the State of a physician, and his answer, over grounds of objection that the alleged facts which formed the basis of the question had not been proved as a foundation for the question, that it called for a mere legal conclusion, and that the answer was objectionable because it stated such a conclusion as to the contributing cause of death; where there was testimony as to such basic facts, and the witness made no such general conclusion, but stated only as to the alleged diseases involved, their causes, and effects upon persons in the condition described.

6. On the subject of flight, the judge charged the jury: "That flight, if any, by one who is alleged to have done an act alleged to be a crime, immediately after the act and similar acts, if proven, from which an inference of consciousness of guilt may be drawn, may be considered by the jury; but flight is subject to explanation; the weight to be given to it or whether the jury will draw an inference of consciousness of guilt or not is for the jury. It is for the jury to determine whether the flight of the defendant, if such has been proven, was due to a sense of guilt or other reasons. If due to other reasons, no inference hurtful to the defendant must be drawn by the jury." This instruction was not subject to the exception that it intimated an opinion that the defendant had fled

from a consciousness of guilt, or that it authorized the jury to convict the defendant from the circumstance of flight alone, where the defendant had admitted, and also stated to the jury, that during the three years after the injury to the deceased he had gone to Florida, although in his statement he said that this was because of his fear of the two brothers of the deceased. See *Luke* v. *State,* 183 *Ga.* 302 (188 S. E. 542) ; *Smith* v. *State,* 43 *Ga. App.* 353 (2) (158 S. E. 770) ; *Taylor* v. *State,* 59 *Ga. App.* 396 (1 S. E. 2d, 52) ; Cann's Requests to Charge, §§ 595-597.

7. Exception is taken to the following charge, which gave verbatim the following requested instruction, except (as stated by the court in an explanatory note) the word "the" instead of "a" was inadvertently used before the word "crime:" "In this connection I charge you that the burden is upon the State in this case to prove the corpus delicti, which means that *the* crime was committed *as alleged,* and the burden is on the State to show that the death of the deceased resulted because of wounds inflicted upon her by the defendant. If you believe that the defendant did inflict wounds upon the deceased, but that the wounds were not the primary cause of her death, but that her death resulted from other diseases not attributable to any wounds which the defendant may have inflicted, then the defendant can not be convicted of the homicide." Considered in connection with the context, and the use of the words, *"as alleged"* immediately following, there is no merit in the contention that the use of "the" before "crime" was an expression of opinion that there was a crime, and that the defendant's contention of justification was untrue. See *Wilson* v. *State,* 152 *Ga.* 337 (4), 342 (110 S. E. 8).

8. The following instruction was not subject to the exception that it omitted the idea of premeditation or deliberation, and was likely to constrain the jury to convict of murder instead of manslaughter: "Did the defendant make an unjustifiable assault upon [the deceased] with a weapon likely to produce death and inflict upon her [a] wound or wounds with malice aforethought, either express or implied, from which wound or wounds she did within a year die from their infliction? If so, you would be authorized to find him guilty of murder." Elsewhere the judge charged fully on the law of murder, malice, voluntary manslaughter, justifiable homicide, assault with intent to murder, assault and battery, and

with full and fair instructions gave to the defendant the benefit of a submission to the jury of each of the lesser offenses. The references to "malice aforethought" and "unjustifiable assault" in the language in question obviated any ground for the attack made.

9. "If a homicide is shown beyond a reasonable doubt to have been committed by the defendant, the law presumes that it is malicious until the contrary appears, unless the evidence adduced by the State shows justification or mitigation or excuse; and if the evidence adduced by the State does not show circumstances of justification, mitigation, or excuse, it would then devolve upon the defendant to show such circumstances in order to reduce the homicide from murder to manslaughter or to justify it." *Warren* v. *State,* 140 *Ga.* 227, 229 (78 S. E. 836). The charge on the presumption of malice was in full accordance with these principles of law.

10. Nor was the charge relative to the presumption of malice erroneous as failing to refer particularly to the fact that the defendant had stated to the jury that he struck the deceased in self-defense to repel her assault upon him with an ice-pick, where there was no request for such a charge, and the judge instructed the jury as to their right to believe the statement of the defendant in preference to the sworn testimony. *Irby* v. *State,* 95 *Ga.* 467 (4) (20 S. E. 218); *Carroll* v. *State,* 99 *Ga.* 36 (2) (25 S. E. 680); *Darby* v. *State,* 79 *Ga.* 63 (8), 69 (3 S. E. 663); *Robinson* v. *State,* 114 *Ga.* 56 (4), 57 (39 S. E. 862); *McCrary* v. *State,* 141 *Ga.* 4 (2) (80 S. E. 305); *Hawkins* v. *State,* 141 *Ga.* 212 (2) (80 S. E. 711); *Harris* v. *State,* 136 *Ga.* 107 (70 S. E. 952); *Cook* v. *State,* 134 *Ga.* 347 (4) (67 S. E. 812). Furthermore, although the defense of justifiable homicide was raised only by the statement of the defendant to the jury, the judge charged not only the law of justifiable homicide, but, as to the specific contention, that "if you believe that [the deceased] made an assault upon the defendant with an ice-pick or other dangerous instrument, and the defendant was justified as a reasonably courageous man in believing she was about to take his life or was about to commit a felonious assault upon him, the defendant would be justified in taking such measures as were reasonably necessary, or apparently so, to prevent such an assault, and that if in the exercise of such measures he killed [the deceased], or committed an assault upon her with the intention to

kill her, then such killing or assault to kill would be justifiable, and the defendant would be guilty of no offense, and you should acquit him."

11. The verdict of guilty of murder was authorized, under the testimony for the State as to the circumstances under which the deceased was found, with ten or more hatchet wounds on her head, her skull fractured, and her legs tied together with rope; as to the living of the defendant and deceased together in the house where she was found, and the removal of the defendant to another State until his arrest three years afterwards; as to the admission by the defendant to a brother of the deceased that he had struck her with a hatchet, without any exculpatory explanation; and under the testimony of physicians (although she did not die until about eight months after the infliction of the wounds, and the immediate cause of death was an infected or gangrenous abscess of the lung), that "the wounds on the head" were "the primary cause of her trouble," the "cause of death," and that the infection and gangrenous condition were "secondary to the infected wounds that she had at the beginning." *Judgment affirmed. All the Justices concur.*