## 31854. WARD v. THE STATE.

INGRAM, Justice.

Harold Lee Ward was convicted of the murder of Carleton Hendrix in the Superior-Court of Clarke County and sentenced to life imprisonment. Appellant contends on appeal that the evidence does not support the verdict of guilty and that the trial judge committed reversible error in his instructions to the jury. We affirm.

Appellant offered no evidence at trial. The state's evidence showed the following: On the afternoon of June 14, 1976, appellant, his girl friend, and Hendrix began drinking at a trailer park in Athens, Georgia. The three of them later drove to a service station that evening to buy gas for Hendrix' car. Appellant and his girl friend left to get more money as they were unable to pay for the gas. Hendrix was left at the station in an apparently intoxicated condition. While driving the car, appellant struck a tree stump by the side of the highway damaging the car so badly that it could not be driven. Appellant returned to the service station and his girl friend walked home. After some conversation at the station, appellant and Hendrix began walking toward the Oconee Street Bridge around 9:15 p.m. Hendrix was so intoxicated that

appellant had to support him while they walked. They were last seen together standing in the middle of the bridge. At approximately 9:45 p.m., appellant approached a police officer who was parked in his car near the bridge. He told the officer that he had lost someone and asked the officer for a ride to his trailer park. When the officer refused, appellant became abusive and walked away. At about 10 p.m. appellant approached a fire station and engaged in a conversation with one of the firemen. Appellant told the fireman that he and Hendrix had gotten into an argument over the damaged car, that he had thrown Hendrix into the river, and that Hendrix couldn't swim. Appellant was intoxicated and, for this reason, the fireman apparently did not believe him. Three days later, on June 17, 1976, Hendrix' body was recovered from the river.

Appellant was interviewed several times by the police during the course of their investigation of Hendrix' death. At the initial interview appellant admitted that he was with Hendrix on June 14 and that they had been walking together. But appellant said that because Hendrix was too intoxicated to walk, he left to get help and, when he returned, Hendrix was gone. In a subsequent interview appellant was informed by the police that he was a suspect in the investigation and was given Miranda warnings. Appellant insisted on his previous statement. After further investigation appellant was arrested for murder and was again given Miranda warnings. After his arrest appellant initially stuck to his original story. However, when he was told that his version was inconsistent with the results of the investigation he revised his earlier version of the events. Appellant admitted that his previous story was untrue, admitted that he was on the bridge with Hendrix, but stated that Hendrix had fallen into the river. Appellant denied that he had thrown Hendrix off the bridge and denied that he had previously confessed this to the fireman on the night of Hendrix' death.

Appellant first contends that it was error for the trial court to refuse to direct a verdict of acquittal because, as a matter of law, the evidence could not support a jury verdict. In essence, he alleges that the state failed to prove

the corpus delicti because the medical examiner could not testify as to the exact cause of Hendrix' death. Appellant concedes that sufficient evidence was adduced to permit the jury to find that he had committed the act of throwing Hendrix into the river. Nonetheless, he argues, there was no evidence presented from which the jury could have concluded beyond a reasonable doubt that this act was the sole proximate cause of death and not merely a coinciding event. See Code Ann. § 26-1101 (a) (Rev. 1972). We do not agree with this view of the evidence.

The medical examiner testified that the victim's lungs contained a considerable amount of fluid; that the alcohol content of the victim's blood was at a high, but not fatal, level; that there was no evidence of trauma; and, that the victim suffered from severe arteriosclerosis and cardiovascular disease but that none of the arteries to the heart was completely blocked. The medical examiner was unable to pinpoint the exact cause of death because of the deterioration of Hendrix' body, but his findings were consistent with death by drowning.

The requirements for determining the proximate cause of death were stated in *Wilson v. State,* 190 Ga. 824, 829 (10 SE2d 861) (1940). There the court said: "Where one inflicts an unlawful injury, such injury is to be accounted as the efficient, proximate cause of the death, whenever it shall be made to appear, either that (1) the injury itself constituted the sole proximate cause of the death; or that (2) the injury directly and materially contributed to the happening of a subsequent accruing immediate cause of the death; or that (3) the injury materially accelerated the death, although proximately occasioned by a pre-existing cause."

See also *Weaver v. State,* 200 Ga. 598 (37 SE2d 802) (1946); and *Singley v. State,* 198 Ga. 212 (31 SE2d 349) (1944). Under this test, appellant's conviction was authorized. The evidence authorized the jury to find that Hendrix died after being thrown in the river by appellant. Even if this act did not directly cause Hendrix' death (and there is no indication that it did not), the jury was authorized to find that this act either materially contributed to the death of Hendrix or materially accelerated it. We conclude that the trial court correctly

refused the motion for a directed verdict of acquittal and sent the case to the jury. See *Davis v. State,* 234 Ga. 730 (4) (218 SE2d 20) (1975). This enumeration of error is without merit.

Appellant also contends that the trial court committed reversible error by failing to properly instruct the jury that the state must prove the cause of death beyond a reasonable doubt. Specifically, he complains of the following portion of the court's charge: " . . . I charge you that it is incumbent upon the state to prove *to the extent required by law* in order for the defendant to be convicted of the offense of murder that the actions alleged in the indictment to have been committed by the defendant were, in fact, committed by the defendant and were the cause of the death of the victim; if you find such a death to have occurred, and that such actions were malicious within the meaning of that word which I have just given you in charge, I charge you that where one inflicts injury upon another, or malicious injury upon another, such injury is to be accounted as the cause of the death whenever it shall be *made to appear* that the injury itself constituted the cause of death. . ." (Emphasis supplied.)

Appellant argues that the phrase "to the extent required by law" had the effect of misleading the jury to consider the state's burden as being less than the "beyond a reasonable doubt" standard. He also argues that this charge had the effect of telling the jury that if the state *makes it appear* that an act is the cause of death, the element of causation may be inferred by the jury.

Appellant's argument fails to take into account the entirety of the charge and recharge given by the trial judge. These jury instructions must be considered as a whole. See *Dodd v. State,* 236 Ga. 572, 576 (224 SE2d 408) (1976); *Proctor v. State,* 235 Ga. 720, 726 (221 SE2d 556) (1975). When the instructions of the trial judge are considered as a whole, it is clear to us the jury was instructed that the state had the burden of proving every element of the crime beyond a reasonable doubt. In his recharge, the trial judge reiterated the reasonable doubt standard and emphasized the heavy burden imposed upon the state with respect to the circumstantial evidence. In

our opinion, the trial judge's instructions could not have caused the jury to misunderstand the burden of proof resting upon the state. This enumeration of error is without merit.

Appellant further contends in his final enumeration of error that the trial court erred in charging the jury concerning circumstantial evidence. The portion of the charge assigned as error states: " . . . When circumstantial evidence is relied upon to establish a fact the evidence must be such as to reasonably establish the theory relied upon and to preponderate to that theory rather than to any other reasonable hypothesis, . . ." Appellant further argues that the trial court compounded its error by charging:

"Where all the facts and circumstances of the case and all reasonable deductions therefrom present two theories of equal probability, one of innocence and the other of guilt, in such a case the jury should acquit."

Again, we must view the charge as a unit and will not consider extracted passages out of the context in which they appear. The record clearly shows that the passages cited by appellant were preceded and followed, both in the charge and recharge, by correct statements of the law on circumstantial evidence, i.e., that the facts must not only be consistent with guilt but must also exclude every reasonable hypothesis or conclusion except the guilt of the accused. See Code Ann. § 38-109 (Rev. 1974). In addition, as noted above, the correct charge on the reasonable doubt standard was repeatedly given by the trial judge. We do not find error in this charge. See *Tarpkin v. State,* 236 Ga. 67 (3) (222 SE2d 364) (1976); *Woods v. State,* 233 Ga. 495, 498 (212 SE2d 322) (1975); and *Pless v. State,* 231 Ga. 228 (1) (200 SE2d 897) (1973).

*Judgment affirmed. All the Justices concur.*

ARGUED JANUARY 24, 1977 — DECIDED FEBRUARY 14, 1977.

*Robert D. Peckham, Jack H. Affleck, Jr., James C. Bonner,* for appellant.

*Harry N. Gordon, District Attorney, B. Thomas Cook, Jr., Assistant District Attorney, Arthur K. Bolton,*

*Attorney General, Harrison Kohler, Staff Assistant Attorney General,* for appellee.