## 76860. SWAILES v. THE STATE.
(373 SE2d 825)

BEASLEY, Judge.

Swailes appeals his conviction and sentence for voluntary manslaughter, OCGA § 16-5-2, following the death of 62-year-old Britton

Waters.

1. Appellant claims that he was entitled to a directed verdict of acquittal under OCGA § 17-9-1 (a) because the State failed to prove that the trauma to the victim's head caused the death.

The evidence construed so as to uphold the verdict, *Humphrey v. State*, 252 Ga. 525 (1) (314 SE2d 436) (1984), showed the following: Swailes' car tire went flat at an intersection where a service station, a truck stop, and a convenience food store were located. The station and the truck stop were closed. Swailes' spare tire was also flat so he went into the food store and purchased two cans of sealant to reinflate the tire. After unsuccessfully using the first can, Swailes returned to the store and using profanity demanded his money back for the second can. He grabbed one of the cans from a store employee and threw it across the parking lot. Swailes did not appear to be sober. He left the store and went across the street to the truck stop.

Waters operated both the service station and the truck stop and lived alone above the truck stop. Just prior to Swailes' arrival, Waters was eating supper and watching television. Although both the service station and the truck stop were closed and only the service station had an air compressor, Swailes expected Waters to help repair the tire. They had a confrontation, and Waters chased Swailes around the side of the truck stop. Swailes said loudly, "go ahead and shoot me." No blows were exchanged, and Waters chased Swailes away from his front door but then was followed there by Swailes.

Swailes' brother, whom Swailes had called to help with the flat, arrived. The brother heard arguing and saw Waters and Swailes "tussling" in the doorway. Waters picked up a pipe which he kept by the door and struck Swailes on the head so he fell backwards. He was not knocked unconscious but sustained a bruise on his scalp.

After being knocked down, Swailes became "wild acting." His brother helped him up and tried to keep him away from Waters but received a scratch as Swailes broke away. Swailes pushed Waters to the floor and kicked him in the face with his work boots, inflicting a large gaping wound over his right eye. Waters was found dead at the scene, having sustained also a bruise between the eyes, associated with other abrasions around the eyes and the nose, and a laceration on the back of the head. The kick wound and the bruise were not inflicted by the same blow. Waters was alive when the kick wound was inflicted.

Autopsy revealed that Waters had coronary artery disease but a visitor who had left Waters minutes before the incident did not observe any signs of heart problems. The victim's brother never knew him to have heart problems. Waters' heart condition was operable and such that Waters might have been unaware of it prior to the fatal incident.

The cause of death was a combination of the trauma to the head associated with the coronary artery disease: the injuries and the trauma, the excitement, and the exertion associated with the trauma was more stress than the heart could stand and Waters experienced sudden death because of it.

"Where one inflicts an unlawful injury, such injury is to be accounted as the efficient, proximate cause of the death, whenever it shall be made to appear, either that (1) the injury itself constituted the sole proximate cause of the death; or that (2) the injury directly and materially contributed to the happening of a subsequent accruing immediate cause of the death; or that (3) the injury materially accelerated the death, although proximately occasioned by a pre-existing cause." *Wilson v. State*, 190 Ga. 824, 829 (2) (10 SE2d 861) (1940).

Appellant urges that the *Wilson* test was not met in view of Waters' pre-existing heart condition and in view of certain testimony by the autopsy physician in response to hypothethical circumstances posed by the defense.

To begin with, there was other expert testimony that even if Waters had been in the throes of a massive heart attack at the time of the injury over the eye, that injury nonetheless would have hastened his death. As to the autopsy physician's testimony, when asked to assume the truth of the defense's hypothetical circumstances, the doctor testified that he would have modified his report to say that the manner of death was uncertain. But this expressed uncertainty was in response to a hypothetical situation and the jury was not required to accept the circumstances as hypothesized by the defense. Moreover, this same physician testified that the head injuries "directly and materially" contributed to Waters' death.

There was sufficient expert testimony to establish proximate causation between the head injuries and the victim's death and thus responsibility under at least one of the situations encompassed by the *Wilson* test. See, e.g., *Hickman v. State*, 186 Ga. App. 118, 119 (3) (366 SE2d 426) (1988); *James v. State*, 250 Ga. 655 (300 SE2d 492) (1983); *Durden v. State*, 250 Ga. 325, 328 (5) (297 SE2d 237) (1982); *Larkin v. State*, 247 Ga. 586 (1) (278 SE2d 365) (1981); *Dupree v. State*, 247 Ga. 470, 472 (1) (277 SE2d 18) (1981).

In all, there was sufficient evidence to enable any rational trier of fact to find Swailes guilty of the voluntary manslaughter of Waters beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Thus, the trial court was correct in denying Swailes a directed verdict of acquittal. *Humphrey v. State*, supra at 526 (1).

2. Appellant also contends that the trial court erred in that it charged involuntary manslaughter, OCGA § 16-5-3, and what constituted simple battery, OCGA § 16-5-23, but did not charge that the

jury could find simple battery if it found from the evidence or the lack thereof that he caused the trauma to the victim but that the trauma did not cause the victim's heart attack. He argues that a lack of positive medical testimony regarding the cause of death coupled with the fact that the court charged on the elements of simple battery required that the court charge simple battery as a lesser included offense.

There was not a lack of positive medical testimony regarding the cause of death. See Division 1, supra. Furthermore, although charged with murder, OCGA § 16-5-1, defendant did not rely at trial on a lesser-included-offense defense; instead, he denied ever touching the victim. He claimed that after regaining consciousness from the blow from the victim, he saw his brother standing beside the victim's body. Therefore, even the charge on involuntary manslaughter was gratuitous. Moreover, since there was uncontradicted evidence that the victim died, it was not necessary to charge on simple battery as a possible verdict. See *Sanders v. State*, 251 Ga. 70, 77 (4) (303 SE2d 13) (1983).

3. Appellant further contends that the trial court erred in not charging on mutual combat.

Again, throughout the trial Swailes did not claim any combative intention, but rather denied initiating any physical contact with the victim or any struggle with him. He maintained that Waters struck him on the head for no apparent reason. He also claimed that he bore the victim no hostility because of the unprovoked attack. This would not raise a situation of mutual combat. Nor would the state's version of what transpired, see Division 1, supra, for " ' "[m]utual combat usually arises when the parties are armed with deadly weapons and mutually agree or intend to fight with them. Mutual combat does not mean a mere fist fight or scuffle." ' [Cits.]" *Massey v. State*, 251 Ga. 515, 516 (1) (307 SE2d 489) (1983).

*Judgment affirmed. Birdsong, C. J., and Banke, P. J., concur.*

DECIDED SEPTEMBER 23, 1988 —
REHEARING DENIED OCTOBER 6, 1988 

*William A. Dowell, Robert J. Duffy,* for appellant.
*Spencer Lawton, Jr., District Attorney, Gregory M. McConnell, Jon Hope, Assistant District Attorneys,* for appellee.