S91A0566. TANKERSLEY v. THE STATE.

(404 SE2d 564)

BELL, Justice.

James E. Tankersley was convicted of the malice murder of James Harrell and William Reese and acquitted of the murder of Richard Lavarnway. Tankersley was sentenced to two consecutive life sentences.[1] On appeal, Tankersley contends that he was interrogated in violation of *Miranda* requirements; that neither the grand jury nor the petit jury was drawn from a proper cross-section of the population of Columbia County because the jury pool did not include residents not registered to vote; that the trial court erred in allowing a state psychiatrist to testify on rebuttal regarding Tankersley's mental

---

[1] The crimes occurred on October 10, 1987. Tankersley was indicted on March 29, 1988, and was found guilty on March 29, 1989. The state sought but did not receive the death penalty, and appellant was sentenced on March 30, 1989. Tankersley filed a motion for new trial on May 1, 1989. The court reporter certified the transcript on October 27, 1989. The trial court denied the motion for new trial on December 12, 1990. Tankersley filed a notice of appeal to the Court of Appeals on December 21, 1990. The appeal was docketed in the Court of Appeals on January 9, 1991. The Court of Appeals transferred the case to the Supreme Court on January 15, 1991, and the case was docketed in this Court on January 24, 1991. The appeal was submitted for decision without oral argument on March 8, 1991.

state because Tankersley was given inadequate *Miranda* warnings before the psychological examination; that the court abused its discretion by not granting a continuance; that the court erred in not excluding certain evidence as hearsay; that the court erred in not instructing the jury on the law of accident; and that venue was improper in Columbia County. We affirm.

In the early morning hours of October 10, 1987, Tankersley shot Lavarnway, Harrell, and Reese at the home of Buddy Williams, in Columbia County. Williams lived with his girl friend, Dawn Pentecost. Williams' house was used as a gathering place by many of his friends with whom he had grown up and gone to school. According to Williams, on the night of the incident Tankersley had been drinking, but did not appear drunk, and Williams, Tankersley and others had been snorting crystal methamphetamine. About 2:00 a.m. on the morning of October 10, Tankersley, Williams, and Pentecost returned to Williams' home following a trip to a gas station, and discovered that Pentecost's car was missing from the driveway. Williams and Tankersley went in search of the car, and found Harrell and Lavarnway driving around in it. Williams then drove Pentecost's car, with Harrell and Lavarnway as passengers, back to Williams' house, and Tankersley followed in his own car. When they all arrived at Williams' house, Williams and Tankersley told Harrell and Lavarnway to leave. Harrell and Lavarnway got in Lavarnway's car, where Reese was asleep in the back seat, but they did not leave. Heated words and threats were exchanged between Tankersley and Lavarnway, and Lavarnway got out of the car and proceeded towards Tankersley carrying nunchaku (an oriental weapon, consisting of two sticks connected by a cord). Tankersley shot Lavarnway in the chest. Tankersley then shot Harrell, who had leaned over in the passenger seat of the car, as well as Reese, who was still in the back seat. Williams testified that he heard about five shots fired. After Williams and Pentecost refused to help him cover up his crime, Tankersley put Lavarnway's body in the trunk of his (Lavarnway's) car. Tankersley then drove the car, with the bodies in it, into a nearby lake, located in Lincoln County.

Autopsy reports revealed that Lavarnway died from a bullet wound to the chest, and that Reese died from two bullet wounds to the head. The medical examiner testified that Harrell died from drowning, secondary to one bullet wound to the head.

Tankersley gave three statements to the police, the third of which was admitted into evidence at trial. He stated that Lavarnway approached him swinging nunchaku and that he warned Lavarnway to stop. When Lavarnway did not, Tankersley shot him. He said he was scared at that point and that thereafter nothing was too clear to him. He added that, because he was so scared, he shot Reese and

Harrell.

At trial, Tankersley testified that he shot Lavarnway in self-defense, after warning Lavarnway that Tankersley would shoot him if Lavarnway kept approaching Tankersley. After shooting Lavarnway, he saw Harrell bend over. He thought Harrell was going to get a gun, and he just started shooting.

A defense psychiatrist testified he was of the opinion that Tankersley, based on all the events of the night and on his psychological background, had a reasonable fear for his life from not only Lavarnway but from all three victims. He added that, as a result of that fear, Tankersley had an adrenalin response and automatically and reflexively shot the victims to protect himself.

1. Reviewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Tankersley guilty of the two murders beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his first enumeration of error Tankersley contends that during the course of his first two interrogations, police officers violated his *Miranda* rights in several respects, rendering inadmissible his third statement, which was made on the morning of October 11, 1987. Tankersley was interrogated first at around 1:55 p.m. on the day of the shootings. Before beginning the interrogation, the officers read Tankersley his *Miranda* rights, and Tankersley signed a written waiver form. During the course of the conversation, which lasted until about 2:48 p.m., Tankersley denied that he killed anyone. In response to one question regarding the three victims, Tankersley answered that

> I don't know who killed them or why they killed them. I don't know who drove the car to the lake, or nothing because I did not do it. I don't know why they said that, but I, I did not kill them. That's the . . . y'all don't believe nothing I'm saying, that's all I've got to say.

At 3:20 p.m., about one-half hour after the first interview ended, an officer again questioned Tankersley, and did not first remind him of his *Miranda* rights. That second interview ended, and another interview occurred the morning of October 11. Before beginning questioning, the officer did remind Tankersley of his *Miranda* rights. Tankersley proceeded to give an incriminating statement.

Tankersley contends that the officers violated his *Miranda* rights in two respects. First, he contends that he made at least an equivocal invocation of his right to remain silent during the first interview when he stated, "that's all I've got to say," and that the officers violated his rights by failing to immediately stop the first interview and clarify whether he was invoking his right to remain silent. Second, he con-

tends the officers violated his rights by failing to remind him of his *Miranda* rights before beginning the second interview. Tankersley contends that these violations tainted the October 11 interrogation, rendering that statement inadmissible.

(a) We find no error in the officers' failure to remind Tankersley of his *Miranda* rights before the second interview. Tankersley was apprised of his rights before the first interview began, and that interview lasted approximately 53 minutes. There was no need to remind him of those rights just 32 minutes later when the second interview began. *Newberry v. State*, 260 Ga. 416, 419 (4) (395 SE2d 813) (1990).

(b) We pretermit a determination whether Tankersley equivocally or unequivocally invoked his right to remain silent. See *Hatcher v. State*, 259 Ga. 274, 275-277 (2) (379 SE2d 775) (1989); *Reeves v. State*, 241 Ga. 44, 45-46 (1) (243 SE2d 24) (1978).[2] We do so because we conclude that, even if he did equivocally or unequivocally invoke his right to remain silent, any error in admitting the October 11 statement would be harmless, as Williams and Pentecost, who were friends of Tankersley's and eyewitnesses to the shootings, described the murders in detail. *Pitts v. State*, 259 Ga. 745, 748 (4) (b) (386 SE2d 351) (1989); *Foster v. State*, 258 Ga. 736, 742 (8) (b) (374 SE2d 188) (1988); *Chapman v. California*, 386 U. S. 18 (87 SC 824, 17 LE2d 705) (1967).

3. Tankersley next contends that the jury list, which was drawn exclusively from the list of registered voters, did not represent a cross-section of the population of the county, as required by OCGA § 15-12-40 (a), because it excluded non-voters. We find no merit to this contention. See *Ingram v. State*, 253 Ga. 622, 627-629 (1) (d) (323 SE2d 801) (1984).

4. In his third enumeration of error, Tankersley contends the trial court erred by allowing a state psychiatrist who had examined Tankersley to testify in rebuttal for the state. Tankersley contends he received inadequate *Miranda* warnings before his interview with the psychiatrist, and that therefore the psychiatrist's testimony should have been excluded. We find no error, as the psychiatrist limited his testimony to Tankersley's mental state and did not describe any statements by Tankersley regarding the crimes for which he was on

---

[2] In *Hatcher*, supra, 259 Ga., we found that Hatcher at least once unequivocally invoked his right to remain silent, and we noted, with regard to two equivocal attempts to invoke that right, that

Under *Christopher v. Florida*, supra, [824 F2d 836, 844 (11th Cir. 1987)], even these equivocal attempts should have limited further questioning to clarifying Hatcher's intentions. If the request is equivocal, the police "may ask questions designed to clarify whether the suspect intended to invoke his right to remain silent," but they may not simply continue the interrogation. Id. at 842. [*Hatcher*, supra, 259 Ga. at 277, fn. 2.]

trial. See *Buchanan v. Kentucky*, 483 U. S. 402, 423 (107 SC 2906, 97 LE2d 336) (1987); *Harrell v. State*, 249 Ga. 48, 52 (6) (288 SE2d 192) (1982).

5. Contrary to Tankersley's assertions in his fourth enumeration of error, we conclude the trial court did not abuse its discretion by refusing to grant the continuances requested by Tankersley. See *Turner v. State*, 258 Ga. 97, 99-100 (2) (365 SE2d 822) (1988).

6. Tankersley's fifth enumeration of error concerns the testimony of his next-door neighbor, Larry Fuller. Fuller testified that he went to Williams' residence after he heard gunshots come from there. He arrived about ten minutes after hearing the shots, and spoke with Williams, who was visibly upset. Williams told him that " '[o]ne boy tried to jump on another out there, and the boy shot him.' " As Williams' telephone was out of order, Fuller returned to his house to call the police. After calling the police, he went back to Williams' house, and arrived there at the same time as the police, which was about 20 or 25 minutes after hearing the shots. He stated that Williams was still upset but not as much as when he first saw him. Fuller testified that Williams told him that Tankersley and Lavarnway had argued, that Lavarnway started toward Tankersley with some nunchaku, and that Tankersley shot Lavarnway.

Tankersley objected to Fuller's testimony regarding Williams' latter statement, but the trial court admitted the testimony on the ground Williams' statement constituted an excited utterance. On appeal Tankersley contends that the statement was not admissible as an excited utterance, as the statement was not made contemporaneously with the shooting. We pretermit whether the statement was admissible as an excited utterance, as we find that the statement was admissible as a prior consistent statement of Williams, who testified at trial and was subject to cross-examination. *Jarrells v. State*, 258 Ga. 833, 837 (14) (375 SE2d 842) (1989).

7. Contrary to Tankersley's sixth enumeration of error, we conclude the trial court did not err in refusing to charge on accident. The evidence warranted a charge on self-defense (which the court did give) but not on accident. Moreover,

> the jury was fully charged as to the duty of the prosecutor to prove every element of the crime of murder, including intent. The jury having chosen to believe appellant guilty of murder, they could not have believed that the death of [the victims] occurred as a result of accident or misfortune. [Cits.] [*Phillips v. State*, 247 Ga. 13 (273 SE2d 606) (1981).]

Accord *New v. State*, 260 Ga. 441, 442 (1) (396 SE2d 486) (1990).

8. In his seventh enumeration of error Tankersley argues that he

is entitled to a new trial regarding the murder of Harrell because the state did not prove venue in Columbia County. We find that venue was proper in Columbia County.

Georgia law provides that a "criminal [action] shall be tried in the county where the crime was committed," OCGA § 17-2-2 (a), and that "[c]riminal homicide shall be considered as having been committed in the county in which the cause of death was inflicted," if that can be determined, OCGA § 17-2-2 (c).

Harrell was shot in Columbia County, but his body was discovered in Lavarnway's car in a lake in Lincoln County. The medical examiner listed drowning, secondary to a bullet wound to the head, as the cause of Harrell's death. The examiner testified that the bullet wound to Harrell's head would have ultimately proved fatal, but that bullet wound would have taken some time to kill him. He added that the bullet wound rendered Harrell unconscious and prevented him from saving himself from drowning.

Tankersley argues that, because there is medical evidence that the cause of Harrell's death was drowning secondary to the bullet wound, venue was appropriate only in Lincoln County where the drowning occurred, not in Columbia County where the shooting occurred and the trial was held. We disagree.

> The requirements for determining the proximate cause of death were stated in *Wilson v. State*, 190 Ga. 824, 829 (10 SE2d 861) (1940). There the court said: "Where one inflicts an unlawful injury, such injury is to be accounted as the efficient, proximate cause of the death, whenever it shall be made to appear, either that (1) the injury itself constituted the sole proximate cause of the death, or that (2) the injury directly and materially contributed to the happening of a subsequent accruing immediate cause of the death; or that (3) the injury materially accelerated the death, although proximately occasioned by a pre-existing cause." [*Ward v. State*, 238 Ga. 367, 369 (233 SE2d 175) (1977).]

Accord *James v. State*, 250 Ga. 655, 656 (300 SE2d 492) (1983).

Tankersley's shooting of Harrell clearly satisfies part two of this test, in that the shooting " 'directly and materially contributed to the happening of a subsequent accruing immediate cause of the death,' " *Ward*, supra, 238 Ga. at 369. Accordingly, we conclude that venue was appropriate in Columbia County, where the shooting occurred.

*Judgment affirmed. All the Justices concur, except Weltner, J., who concurs in the judgment only as to Division 2 (b), and Hunt, J., who concurs in the judgment only as to Division 7.*

DECIDED JUNE 12, 1991.

*Fleming, Blanchard & Bonner, James G. Blanchard,* for appellant.

*Michael C. Eubanks, Jr., District Attorney, Richard E. Thomas, Assistant District Attorney, Michael J. Bowers, Attorney General, Mary Beth Westmoreland, Senior Assistant Attorney General,* for appellee.