295 Ga. 204
FINAL COPY

S14A0302.  FRANKLIN v. THE STATE.

BENHAM, Justice.

On July 5, 1998, appellant Terry Franklin and Maurice Coleman severely beat the victim Kenneth Briddell who died from his injuries three months later.[1]

1.  Appellant alleges the evidence was insufficient to convict him of felony murder.  At trial, Coleman and two other witnesses testified that Coleman hit the victim with a gun and appellant stomped and kicked the victim in the head and mouth as the victim was prone on the ground. The evidence showed that, at the time of the beating, the victim owed appellant $5 in drug money. The victim was treated in the hospital for his injuries, but was in a chronic vegetative state such that he had to be surgically fitted with a tracheal tube for breathing and another tube for feeding.  The treating physician stated that the

---

[1] On July 30, 2004, a Fulton County grand jury indicted appellant and Maurice Coleman on charges of felony murder (aggravated assault) and aggravated assault.  Appellant was tried from August 12-17, 2004, and the jury found him guilty on both counts.  The aggravated assault merged into the felony murder conviction for which appellant was sentenced to life in prison on August 26, 2004.  Appellant, through trial counsel, initially moved for a new trial on September 7, 2004.  After filing numerous amendments to the motion for new trial, being assigned several different appellate attorneys, and going through various procedural hurdles, the trial court held a hearing on the motion for new trial on August 10, 2011, and  the trial court denied the motion on September 28, 2012. Appellant timely filed his notice of appeal.  The case was docketed to the January 2014 term of this Court for a decision to be made on the briefs.

victim was awake, but not alert or oriented, and that his chronic vegetative state would not improve. After three months in the hospital, the victim was set to be moved to a permanent care facility. However, on October 10, 1998, the victim's tracheal tube became dislodged such that he could not breathe and he went into respiratory arrest and then his heart stopped beating. Although life-saving measures were attempted, the victim died that day. The victim's treating physician listed the victim's cause of death as respiratory arrest and asystole. The county medical examiner later reviewed the victim's medical records and amended the death certificate to indicate that the cause of death was delayed complications of blunt head trauma. In explanation of his reasons for amending the death certificate issued by appellant's treating physician, the county medical examiner testified as follows:

> Respiratory arrest means a person stops breathing. That's not a cause of death. That describes death. The cause of the individual's death is head trauma, and it's . . . the complications of that head trauma. It didn't result in his death immediately, but the complications related to that head trauma [are] what led to the respiratory arrest. . . . [Asystole] means the heart no longer generates any electrical activity. It's not really the cause of death, it is a description of the death. . . .

On June 5, 1999, approximately eight months after the victim died, authorities arrested appellant for murder. While riding in the car on the way to be

2

fingerprinted and booked, appellant told the arresting officer that he had "beat up dude" but that he had not hit the victim with a gun.

(a) Appellant does not dispute that he beat the victim. He contends, however, that his actions did not cause the victim's death because the treating physician listed the cause of death as respiratory arrest and asystole, conditions which were immediately triggered by the tracheal tube becoming dislodged at the hospital. We disagree.

> When construing Georgia's felony murder statute, this Court has held that causing the death of another human being means *proximate* causation. State v. Jackson, 287 Ga. 646 (2) (697 SE2d 757) (2010). "Proximate causation imposes liability for the reasonably foreseeable results of criminal . . . conduct if there is no sufficient, independent, and unforeseen intervening cause." Id. at 654. We consider the elements of the felony not in the abstract, but in the actual circumstances in which the felony was committed. Davis v. State, 290 Ga. 757, 760 (4) (725 SE2d 280) (2012).

Currier v. State, 294 Ga. 392, 394 (1) (754 SE2d 17) (2014). Here, the dislodgement of the tracheal tube was not an unforeseen intervening cause of the victim's death because the beating placed the victim in a chronic vegetative state necessitating the placement of the tracheal tube. As such, the dislodging of the tracheal tube was only secondary to the beating which was the proximate cause of death. See Skaggs v. State, 278 Ga. 19 (1) (596 SE2d 159) (2004) (kicking

3

the victim with a steel-toed boot was proximate cause of the victim's death days later; the victim's fall head-first onto concrete after being kicked was not reasonably unforeseeable); Green v. State, 266 Ga. 758 (2) (b) (470 SE2d 884) (1996) (defendant's stabbing his wife was the proximate cause of her death from a stress ulcer); Dupree v. State, 247 Ga. 470 (1) (277 SE2d 18) (1981) (defendant's actions in robbing the victim at gunpoint and hitting the victim were the proximate cause of the victim's death by cardiac arrest). The jury was authorized to reject any alternate theory of causation and conclude that appellant's actions in beating the victim caused the victim's death. Neal v. State, 290 Ga. 563 (1) (722 SE2d 765) (2012). See also Bryant v. State, 270 Ga. 266 (1) (a) (507 SE2d 451) (1998) (evidence sufficient to convict on charge of felony murder where gunshot to the head caused victim to be immobilized for a significant amount of time during treatment and recovery; said immobilization put the victim at greater risk of suffering the pulmonary embolism that caused her death). Accordingly, the evidence was sufficient for a rational jury to find appellant guilty beyond a reasonable doubt of the charge for which he was convicted. Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

(b) Appellant alleges that the medical examiner was not authorized to investigate the victim's death and/or amend the death certificate under OCGA §§ 31-10-6 and 45-16-24. Our review of the record shows appellant failed to make any objection at trial to the evidence regarding the medical examiner's investigation of the victim's death or to the amended death certificate. Accordingly, this issue has not been preserved for appellate review. See Matthews v. State, 294 Ga. 50 (2) (751 SE2d 78) (2013); Hall v. State, 292 Ga. 701 (2) (743 SE2d 6) (2013). See also Crawford v. State, 267 Ga. 543 (6) (480 SE2d 573) (1997) (defendant could not raise grounds on appeal that were not raised below challenging the admission of the deceased's death certificate).

2. Appellant alleges he is entitled to a new trial because the trial court failed to remove Juror 13 for cause. We disagree. An appellate court pays deference to the trial court's resolution of any equivocations or conflicts in a prospective juror's responses. Lewis v. State, 279 Ga. 756 (3) (a) (620 SE2d 778) (2005). The determination of a potential juror's impartiality is within the trial court's sound discretion, and the trial court will only be reversed on such matter upon finding a manifest abuse of discretion. See Kim v. Walls, 275 Ga. 177, 178 (563 SE2d 847) (2002). See also Poole v. State, 291 Ga. 848 (3) (734

SE2d 1) (2012). Here, Juror 13 raised his hand when the trial court asked, on behalf of the prosecution and the defense, the following question: "Do any of you believe that it is the job of the defense attorneys to trick you?" Appellant did not ask any follow-up questions regarding Juror 13's response to the question, and the only discussion regarding Juror 13's potential service was whether he had a valid hardship that would preclude his service. When defense counsel mentioned that she might want to remove Juror 13 for cause, the trial court noted she had failed to ask any follow-up questions during the individual voir dire, and he allowed Juror 13 to remain in the jury pool. Appellant then used one of his peremptory challenges to strike Juror 13. In this case, there has been no showing that the trial court manifestly abused its discretion and so this alleged enumeration of error cannot be sustained. Id.

3. Appellant alleges the facts of the case did not conform to the jury charges given by the trial court so as to authorize the jury to find him guilty of felony murder. The trial court charged in pertinent part regarding the connection between the felony and the homicide:

> Felony murder during the commission of a felony. If you find and believe beyond a reasonable doubt that the defendant committed the homicide alleged in this indictment at the time the defendant was engaged in the commission of the felony of

6

aggravated assault, then you would be authorized to find the defendant guilty of felony murder, whether the homicide was intended or not.

In order for a homicide to have been done in the commission of this particular felony, there must be some connection between the felony and the homicide. The homicide must have been done in carrying out the unlawful act, not collateral to it. It is not enough that the homicide occurred soon or presently after the felony was attempted or committed.

There must be such legal relationship between the homicide and the felony so as to cause you to find the homicide occurred before the felony was at an end or before any attempt to avoid conviction or arrest for the felony. The felony must have a logical relationship to the homicide, be at least concurrent with it in part and be a part of it in an actual and material sense.

A homicide is committed in the carrying out of a felony . . . when executed by the accused while engag[ed] in the performance of any act required for the full execution of the felony.

After the jury retired to the jury room, appellant complained that the judge instructed that the felony had to have a "logical relationship" to the homicide rather than a "legal relationship" to the homicide. Accordingly, the trial court gave the jury the following recharge:

If you find and believe beyond a reasonable doubt that the defendant committed the homicide alleged in the bill of indictment at the time the defendant was engaged in the commission of the felony of aggravated assault, then you would be authorized to find the defendant guilty of felony murder, whether the homicide was intended or not.

In order for the homicide to have been done in the commission of this particular felony, there must be some connection between the felony and the homicide. The homicide must have

7

been done in carrying out the unlawful act, not collateral to it. It is not enough that the homicide occurred soon or presently after the felony was attempted or committed. There must be such a legal relationship between the homicide and the felony to cause you to find that the homicide occurred before the felony was at an end or before any attempt to avoid conviction or arrest for the felony. The felony must have a legal relationship to the homicide, be at least concurrent with it in part and be part of it in an actual and material sense.

A homicide is committed in the carrying out of a felony when it is committed by the accused while engaged in the performance of any act required for the full execution of the felony.

Appellant voiced no further objection to the charges or the recharge, reserving any other objections to the jury charges for a later time.

In his brief, appellant argues that under the trial court's recharge, his conviction cannot stand because there was no showing that the homicide occurred before or during the "full execution" of the aggravated assault. This argument has no merit. On appeal, we read the jury charges as a whole to determine the presence of any error. Sapp v. State, 290 Ga. 247, 251 (2) (719 SE2d 434) (2011). In this case, the jury charges, including the initial charge and the recharge, are correct statements of the law. See id. (where trial court gave same pattern charge regarding the felony's relationship to the homicide as was given in the case at bar); Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 2.10.30 (4th ed. 2007, updated through July 2013). Contrary to

8

appellant's argument, the jury was not required to find that the homicide occurred prior to or during the completion of the felony aggravated assault. Both the original charge and the recharge stated that the homicide and felony needed only to be concurrent "in part" and that the homicide occur before any attempt by appellant to avoid conviction or arrest. The evidence shows that the head trauma, complications from which led to the victim's death, was received during appellant's aggravated assault of the victim by beating and kicking the victim in the head and that the death of the victim occurred prior to any attempt by appellant to avoid conviction or arrest. Therefore, the jury charges and the facts of the case were in conformity and, as discussed in Division 1, supra, the evidence was sufficient for appellant to be convicted of felony murder.

Judgment affirmed. All the Justices concur.

Decided May 19, 2014.

Murder. Fulton Superior Court. Before Judge Baxter.

9

Dell Jackson, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Arthur C. Walton, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.