306 Ga. 338
FINAL COPY

S19A0209, S19X0210. THE STATE v. MONDOR; and vice versa.

WARREN, Justice.

In this criminal case, the State appeals from an order dismissing an indictment against Dannie Albert Mondor, who cross-appeals. The indictment charged Mondor with homicide by vehicle in the first degree, in violation of OCGA § 40-6-393 (b), predicated on a hit-and-run offense (Count 1), and hit and run in violation of OCGA § 40-6-270 (b) (Count 2). Mondor filed demurrers to the indictment, as well as a motion to present evidence that Bradley Braland — who died as a result of the accident set forth in the indictment — was not wearing his seatbelt.[1]

Evidence presented at a motions hearing showed that while

---

[1] Mondor filed demurrers to the previous two indictments; they were nolle prossed. He later filed a third amended demurrer, which is the operative demurrer. That demurrer reasserted and incorporated the prior two demurrers and the constitutional challenges alleged in them. The record does not contain the prior demurrers or Mondor's motion to present seatbelt-use evidence, but argument on the motion and the constitutional challenges are in the motions transcript.

Mondor was driving a large recreational vehicle and towing a trailer on an interstate highway, his front right bumper allegedly made contact with the left rear bumper of a second vehicle, causing it to strike a third vehicle. Braland, a passenger in the third vehicle, was ejected and later pronounced dead at the scene. After the collisions, Mondor stopped briefly on the side of the highway at a nearby exit. He then proceeded several more miles to another exit, where he stopped in a parking lot, called the police, and waited to make a report on the accident.

At the motions hearing, Mondor argued that the indictment should be dismissed because it fails to state all the elements of hit and run in both counts, and in particular fails to state the mens rea required to commit hit and run; that OCGA § 40-8-76.1 (d) — a statute that precludes evidence of failure to wear a seatbelt — is unconstitutional as applied to him because it prevents him from presenting a full and complete defense to the charges in the indictment that he violated OCGA §§ 40-6-270 (b) and 40-6-393 (b) when he caused an accident that "caused" the victim's death; and

that the hit-and-run and vehicular-homicide statutes are unconstitutionally vague as applied to him.

The trial court dismissed the indictment because it was not "perfect in form and substance," concluding that the hit-and-run count (Count 2) did not allege the essential element of mens rea — i.e., that Mondor had "knowledge of the death, damage or injury" caused by an accident involving him. In the same order, the trial court denied Mondor's motion to present seatbelt-use evidence, declining to "find an exception" to the well-established "bar against seatbelt use evidence" under OCGA § 40-8-76.1. Finally, the trial court also declined Mondor's request — related to his claims of unconstitutional vagueness — to "declare an exact definition of the word 'cause' as used in OCGA § 40-6-393."

The State appeals in Case Number S19A0209, and Mondor cross-appeals in Case Number S19X0210.[2] For the reasons that

_____

[2] See OCGA §§ 5-7-1 (a) (1) (authorizing a direct appeal by the State from an order dismissing an indictment) and 5-7-2 (b) (2) (providing that a certificate of immediate review is not required from an order described in OCGA § 5-7-1 (a) (1)). We note that the State directly appealed the trial court's

3

follow, we reverse the trial court's dismissal of the indictment in Case Number S19A0209, and we affirm the exclusion of seatbelt-use evidence in Case Number S19X0210, albeit for reasons different from those that the trial court gave.

*Case No. S19A0209*

1. The State contends that the trial court "erred by granting Mondor's special demurrer" to Count 2 and by dismissing the

order to the Court of Appeals, and Mondor also filed an application for interlocutory appeal, which he filed after obtaining a certificate of immediate review. The Court of Appeals granted the application based on Mondor's right to a cross-appeal pursuant to OCGA § 5-7-1 (b) and directed him to file a notice of cross-appeal, which he did in a timely manner. A panel of the Court of Appeals voted 2-1 to reverse the trial court's dismissal of the indictment, but transferred Mondor's cross-appeal to this Court pursuant to our constitutional-question jurisdiction. *State v. Mondor*, 346 Ga. App. 612 (816 SE2d 790) (2018). The cross-appeal was docketed in this Court as Case Number S18A1611. This Court then entered an order in that case, explaining that "[b]ecause we have subject matter jurisdiction over Mondor's cross-appeal, we have jurisdiction over the whole case." Accordingly, we directed the Court of Appeals to recall the remittitur, vacate its judgment in the direct appeal, and transfer the direct appeal to this Court. We emphasize that the judgment entered in *Mondor*, 346 Ga. App. at 612, was properly vacated to the extent that it relates to the State's direct appeal. That direct appeal was properly transferred and docketed in our Court as Case Number S19A0209. Case Number S18A1611 (the cross-appeal previously transferred from the Court of Appeals) was stricken from the docket, and Mondor's cross-appeal was redocketed in this Court as Case Number S19X0210.

4

indictment. As an initial matter, both the State and Mondor appear to agree that the trial court dismissed the indictment because Count 2 failed to withstand a special demurrer.[3] But we disagree with the parties' characterization of the trial court's action below. In sum, the trial court action being challenged is best understood as dismissing the indictment because the hit-and-run count (Count 2) did not survive a *general* demurrer.

Magic words are not required to file a demurrer, and the substance and function of a motion or pleading generally controls our review. See *Gulledge v. State*, 276 Ga. 740, 741 (583 SE2d 862) (2003) ("[T]here is no magic in nomenclature and . . . substance controls our consideration of pleadings."); *State v. Henderson*, 283 Ga. App. 111, 112 n.6 (640 SE2d 686) (2006) (evaluating and reversing trial court's dismissal of a criminal charge and noting that even where a defendant should have filed a demurrer instead of a

---

[3] Mondor goes so far as to contend that the trial court did not address his general demurrer, and to admit that the indictment cited the relevant Code section and that it "mostly followed its language." Indeed, Mondor states in his brief on appeal that he will not even address whether a general demurrer should have been granted.

5

motion to dismiss, it "is the substance and function of a motion and not its nomenclature that controls" (citation and punctuation omitted)). Here, Mondor argued — and the trial court ultimately concluded — that Count 2 of the indictment "fail[ed] to allege every essential element . . . since it makes no mention of any knowledge by the Defendant of any death, damage[,] or injury." This type of "challenge to the sufficiency of an indictment because it fails to set forth all of the essential elements of the charged crime is properly considered a general demurrer." *Strickland v. State*, 349 Ga. App. 673, 674 (824 SE2d 555) (2019); see also *Kimbrough v. State*, 300 Ga. 878, 880 (799 SE2d 229) (2017) (a general demurrer "challenges the sufficiency of the *substance* of the indictment") (citation and punctuation omitted; emphasis in original).[4] In this regard, we

---

[4] The trial court characterized the indictment's failure as one of "form and substance," with the reference to "form" sounding in special demurrer — which challenges the sufficiency of the *form* of the indictment. See *City of Peachtree City v. Shaver*, 276 Ga. 298, 301 (578 SE2d 409) (2003) ("A defendant is entitled to a charging instrument that is perfect in form as well as substance, and the proper method to challenge the form of such instrument is a special demurrer." (citations omitted)); see also *Kimbrough*, 300 Ga. at 880-881 ("By filing a special demurrer, the accused claims not that the charge in an indictment is fatally defective and incapable of supporting a conviction (as

direct the parties to the helpful analogy to the Civil Practice Act expressed in *Kimbrough*: "A motion to dismiss for failure to state a claim under OCGA § 9-11-12 (b) (6) performs substantially the same function as a general demurrer," while "a motion for a more definite statement under OCGA § 9-11-12 (e) is in some ways 'the modern replacement for a special demurrer.'" (Citation omitted.) 300 Ga. at 881 n.12. We therefore review the trial court's order based on the understanding that the indictment was dismissed based on a general demurrer, and we conduct that review "de novo in order to determine whether the allegations in the indictment are legally sufficient." *State v. Cohen*, 302 Ga. 616, 618 (807 SE2d 861) (2017) (citation and punctuation omitted).

Our review of the trial court's ruling does not turn on whether the indictment could have been made clearer or more definite, but most importantly whether it "contains the elements of the offense

would be asserted by general demurrer), but rather that the charge is imperfect as to form or that the accused is entitled to more information." (citation and punctuation omitted)). But that characterization does not change that both Mondor's argument and the trial court's ruling were in fact focused on the *substance* of the indictment.

7

charged." *Smith v. State*, 303 Ga. 643, 647 (814 SE2d 411) (2018); see also *Atkinson v. State*, 301 Ga. 518, 526 (801 SE2d 833) (2017) ("A general . . . demurrer to the indictment would not have been successful, as the indictment properly set out all of the facts and elements of the crimes necessary to show that Atkinson could be found guilty of the crimes alleged . . . ."). To the extent that an indictment "fails to allege all the essential elements of the crime or crimes charged," including the required mens rea, it violates due process, is void, and cannot withstand a general demurrer. *Jackson v. State*, 301 Ga. 137, 139-140 (800 SE2d 356) (2017) (holding that indictment was fatally defective and did not withstand a general demurrer where it alleged violation of a specified criminal code section but did not "set out all the elements of the offense" or "allege all the facts necessary to establish" a violation); *Henderson v. Hames*, 287 Ga. 534, 538 (697 SE2d 798) (2010) (holding that the omission of the statutory mens rea element rendered the indictment void). On the other hand, if an indictment does "recite the language of the statute that sets out all the elements of the offense charged"

8

or "allege the facts necessary to establish violation of a criminal statute," then the indictment is sufficient to withstand a general demurrer because "the accused cannot admit the allegations of the indictment and yet be not guilty of the crime charged." *Jackson*, 301 Ga. at 141. Indeed, we have before explained that "[t]he true test of the sufficiency of an indictment" to withstand a general demurrer is "'[i]f all the facts which the indictment charges can be admitted, and still the accused be innocent, the indictment is bad; but if, taking the facts alleged as premises, the guilt of the accused follows as a legal conclusion, the indictment is good.'" *Allen v. State*, 300 Ga. 500, 502 (796 SE2d 708) (2017) (citation omitted).

Here, Count 2 of the indictment charged Mondor with hit and run under OCGA § 40-6-270. The relevant subsections of that statute provide:

> (a) The driver of any vehicle involved in an accident resulting in injury to or the death of any person or in damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of the accident or shall stop as close thereto as possible and forthwith return to the scene of the accident and shall:
> (1) Give his or her name and address and the

9

registration number of the vehicle he or she is driving;

(2) Upon request and if it is available, exhibit his or her operator's license to the person struck or the driver or occupant of or person attending any vehicle collided with;

(3) Render to any person injured in such accident reasonable assistance, including the transporting, or the making of arrangements for the transporting, of such person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such transporting is requested by the injured person; and

(4) Where a person injured in such accident is unconscious, appears deceased, or is otherwise unable to communicate, make every reasonable effort to ensure that emergency medical services and local law enforcement are contacted for the purpose of reporting the accident and making a request for assistance.

The driver shall in every event remain at the scene of the accident until fulfilling the requirements of this subsection. Every such stop shall be made without obstructing traffic more than is necessary.

(b) If such accident is the proximate cause of death or a serious injury, any person ***knowingly failing to stop and comply with the requirements of subsection (a)*** of this Code section shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment for not less than one nor more than five years.

(c) (1) If such accident is the proximate cause of an injury other than a serious injury or if such accident resulted in damage to a vehicle which is driven or attended by any person, any person ***knowingly failing to stop or comply with the requirements of this Code section*** shall be guilty of a misdemeanor and [shall be fined or imprisoned for up to 12 months, or both]. . . .

OCGA § 40-6-270 (a), (b), (c) (1) (emphasis supplied). In turn, Count 2 of the indictment alleged, in relevant part, that Mondor, as the driver of a vehicle that

> was involved in an accident . . . which was the proximate cause of the death of Bradley Braland, the victim, ***did knowingly fail to stop and comply with the requirements of O.C.G.A. § 40-6-270 (a)***, to wit: said accused, being the driver of a vehicle involved in an accident resulting in injury to and the death of Bradley Braland, a person, did fail to immediately stop said accused's vehicle at the scene of the accident and did fail to stop said accused's vehicle as close thereto as possible and forthwith return to the scene of the accident; . . . in violation of O.C.G.A. § 40-6-270 (b); contrary to the laws of [this] State.

(Emphasis supplied.) Because Mondor "cannot admit the allegations" in Count 2 of the indictment and "be not guilty of the crime charged," Count 2 is not vulnerable to a general demurrer. *Jackson*, 301 Ga. at 141; see also *Allen*, 300 Ga. at 502. Indeed, if Mondor admitted that he "was involved in an accident . . . which was the proximate cause of the death of Bradley Braland," and that he "did knowingly fail to stop and comply with the requirements of OCGA § 40-6-270 (a)" when he "did fail to immediately stop [his]

11

vehicle at the scene of the accident and did fail to stop [his] vehicle as close thereto as possible and forthwith return to the scene of the accident" — the precise allegations contained in Count 2 — he would be guilty of hit and run under OCGA § 40-6-270 (b).

Nevertheless, Mondor argued below, and the trial court ultimately determined, that the indictment omitted an essential element of the hit-and-run offense alleged in Count 2: knowledge that "an accident had occurred resulting in death, damage, or injury to another." *Dworkin v. State*, 210 Ga. App. 461, 462 (436 SE2d 665) (1993); see also *Sevostiyanova v. State*, 313 Ga. App. 729, 739 (722 SE2d 333) (2012). Pointing to *Dworkin*, which the trial court cited in its order dismissing the indictment, Mondor contends on appeal that "knowledge of the death, damage or injury is generally a prerequisite to conviction, even though the statute does not expressly require such knowledge by the motorist," and that "knowledge is, of course, an element of the offense." *Dworkin*, 210 Ga. App. at 462. In essence, Mondor argues that the trial court correctly dismissed the indictment because "an individual cannot be

12

punished for failing to return to the scene of an accident if he did not know that he was involved in an accident." To hold otherwise, he contends, would transform hit and run into a strict-liability offense.

We disagree that the indictment failed to allege mens rea or any other essential element of hit and run. First, both Mondor's argument and the trial court's order ignore that Count 2 of the indictment tracks OCGA § 40-6-270 (a) and (b) — including the knowledge requirement contained in subsection (b) — by alleging that Mondor "did knowingly fail to stop and comply with the requirements of O.C.G.A. § 40-6-270 (a)." A person cannot "knowingly" fail to stop and comply with certain statutory requirements unless he knows of the circumstances from which the duty to stop and comply arises in the first place. Knowledge of noncompliance as expressed in subsection (b) therefore requires knowledge of the condition that gives rise to the requirements specified in subsection (a), which references "an accident resulting in injury to or the death of any person or in damage to a vehicle." Thus, OCGA § 40-6-270 requires knowledge of an accident that

13

resulted in at least one of three enumerated consequences: injury, death, or damage. And because Count 2 recites the statutory language setting out all of the elements of subsections (a) and (b) of OCGA § 40-6-270, including the mens rea element, that count is sufficient to withstand a general demurrer. See *Jackson*, 301 Ga. at 141; *State v. Wyatt*, 295 Ga. 257, 260 (759 SE2d 500) (2014) ("[A]n indictment couched in the language of the statute alleged to have been violated is not subject to a general demurrer." (citation and punctuation omitted)). We therefore reverse the trial court's dismissal of the indictment against Mondor for hit and run and for vehicular homicide.[5]

*Case No. S19X0210*

---

[5] The trial court also erred by dismissing Count 1 of the indictment, vehicular homicide predicated on hit and run. It is true that Count 1 cites OCGA § 40-6-270 (b), as opposed to reciting all of the elements of hit and run. In doing so, however, Count 1 tracks the language of the applicable provision of the vehicular homicide statute, OCGA § 40-6-393 (b), which itself cites OCGA § 40-6-270 (b) without setting out all of the elements of hit and run, and it describes the circumstances of the crime. If Mondor admitted the allegations in Count 1, he would be guilty of vehicular homicide. See *Bautista v. State*, 305 Ga. App. 210, 213 (699 SE2d 392) (2010); see also *Duggan v. State*, 225 Ga. App. 291, 297 (483 SE2d 373) (1997). Accordingly, Count 1 also survives a general demurrer.

2. In his cross-appeal, Mondor contends that OCGA § 40-8-76.1 (d), Georgia's statutory exclusion of seatbelt-use evidence, is unconstitutional as applied to him. Specifically, he argues that Braland's violation of state law by failing to wear a seatbelt is "highly relevant" evidence of causation of Braland's death, and that OCGA § 40-8-76.1 (d) therefore violates his right under the United States Constitution to present a complete defense. Mondor's argument presents a threshold issue of constitutional avoidance, because if seatbelt-use evidence is *not* relevant to causation in this case, this Court will have no occasion to reach the merits of his constitutional claim. See *Alderman v. State*, 241 Ga. 496, 505 (246 SE2d 642) (1978) (citing *United States v. Hale*, 422 U.S. 171 (95 SCt 2133, 45 LE2d 99) (1975), as having framed an issue as an evidentiary question, holding that the evidence was inadmissible, and thereby avoiding the constitutional issue); cf. *Bell v. State*, 293 Ga. 683, 684 n.2 (748 SE2d 382) (2013) (trial court noted that it was unnecessary to address the defendant's constitutional challenge to OCGA § 40-8-76.1 (d) because it excluded seatbelt-use  evidence in

limine, but not on the exclusive basis of OCGA § 40-8-76.1 (d)). And indeed, we need not reach the constitutional question here because, as explained more below, the type of evidence Mondor seeks to admit is not relevant to causation in his criminal case and is therefore inadmissible.

For many of the same reasons, we also do not reach the question of whether OCGA § 40-8-76.1 (d) applies in criminal cases in the first place. To be sure, Mondor presumes that the statute applies in criminal cases generally and in this case specifically, given that he asked the trial court to "find an exception to the bar against seatbelt use evidence." And although the trial court did not expressly rule that OCGA § 40-8-76.1 (d) applied (and thus necessitated exclusion of the seatbelt evidence Mondor sought to admit), it necessarily implied that when it declined to grant Mondor's requested "exception," which is best understood as an "exception" to OCGA § 40-8-76.1 (d)'s exclusion of seatbelt-use evidence as "evidence of negligence or causation." See OCGA § 40-8-76.1 (d). For the reasons explained below, we affirm the trial

16

court's order excluding evidence of seatbelt-use evidence in this case, albeit on different grounds than the trial court's reasoning. See *Drews v. State*, 303 Ga. 441, 448 (810 SE2d 502) (2018) (relying on the "right for any reason rule" in concluding that the trial court did not abuse its discretion when it excluded evidence at trial).

We begin by evaluating whether seatbelt-use evidence is relevant to causation under circumstances like these, and in so doing we turn to the text of Georgia's hit-and-run statute. That statute makes clear that for an accident to qualify as a felony hit-and-run offense under OCGA § 40-6-270 (b), the accident in which the defendant was involved must be "the proximate cause" of a death or serious injury. OCGA § 40-6-270 (b) ("If such accident is the proximate cause of death or a serious injury, any person knowingly failing to stop and comply with the requirements of subsection (a) of this Code section shall be guilty of a felony[.]"). See also OCGA § 40-6-270 (c) (1) (providing that any person who knowingly fails to stop or comply with the requirements of the Code section is guilty of a misdemeanor if the accident is "the proximate cause of an injury

17

other than a serious injury or if such accident resulted in damage to a vehicle which is driven or attended by any person"). Similarly, Georgia's vehicular-homicide statute provides that a driver "who, without malice aforethought, causes an accident which causes the death of another person and leaves the scene of the accident in violation of subsection (b) of Code Section 40-6-270 commits the offense of homicide by vehicle in the first degree," OCGA § 40-6-393 (b), and "'the term "cause" has been regularly construed as requiring proximate causation'" in that context, *State v. Ogilvie*, 292 Ga. 6, 11 (734 SE2d 50) (2012) (quoting *State v. Jackson*, 287 Ga. 646, 654 (697 SE2d 757) (2010)).

We next turn to the statutory exclusion of seatbelt-use evidence, which also references causation. That statute provides that "[t]he failure of an occupant of a motor vehicle to wear a seat safety belt . . . *shall not be considered evidence of negligence or causation* [and] shall not otherwise be considered by the finder of fact on any question of liability of any person[.]" OCGA § 40-8-76.1 (d) (emphasis supplied). This Court has interpreted a prior version

of OCGA § 40-8-76.1 (d)[6] and rejected certain constitutional challenges to it in a civil case, see *C.W. Matthews Contracting Co. v. Gover*, 263 Ga. 108, 108-110 (428 SE2d 796) (1993), but neither this Court nor the Court of Appeals has relied on OCGA § 40-8-76.1 (d) to exclude seatbelt-use evidence in a criminal case.

To be sure, the Court of Appeals has before cited a prior version of OCGA § 40-8-76.1 (d) in a criminal vehicular-homicide case where

---

[6] When OCGA § 40-8-76.1 was originally enacted in 1988, subsection (d) provided:

> Failure to wear a seat safety belt in violation of this Code section shall not be considered evidence of negligence, shall not be considered by the court on any question of liability of any person, corporation, or insurer, shall not be any basis for cancellation of coverage or increase in insurance rates, and shall not diminish any recovery for damages arising out of the ownership, maintenance, occupancy, or operation of a passenger vehicle.

Ga. L. 1988, p. 31, § 1. In 1999, subsection (d) was amended to add the words "or causation" and make other minor changes, so as to provide:

> The failure of an occupant of a motor vehicle to wear a seat safety belt in any seat of a motor vehicle which has a seat safety belt or belts shall not be considered evidence of negligence *or causation*, shall not otherwise be considered by the finder of fact on any question of liability of any person, corporation, or insurer, shall not be any basis for cancellation of coverage or increase in insurance rates, and shall not be evidence used to diminish any recovery for damages arising out of the ownership, maintenance, occupancy, or operation of a motor vehicle.

Ga. L. 1999, p. 276, § 1 (emphasis supplied). Subsection (d) of OCGA § 40-8-76.1 has remained unchanged since the 1999 amendment.

19

the exclusion of seatbelt-use evidence was affirmed.[7] *Whitener v. State*, 201 Ga. App. 309, 311 (410 SE2d 796) (1991). But in *Whitener*, the Court of Appeals did not construe or otherwise rely on former OCGA § 40-8-76.1 (d), and instead rejected the defendant's argument "that the victim's failure to wear a seatbelt should be considered in determining the 'cause' of death" by relying on general principles of proximate causation. *Whitener*, 201 Ga. App. at 311. To that end, the Court of Appeals held that so long as the defendant's negligence proximately caused the victim's death, the failure to wear a seatbelt was not relevant to causation even if it was also a proximate cause of the death. Among other things, the court noted that a victim's "'failure to wear a seatbelt may arguably be a proximate cause of [his] death but was not an event that can sensibly be described as an *intervening* cause of [his] injuries'"; "'[s]o long as the defendant's negligence proximately caused the death of another, the crime has been committed, *even if there are other factors which*

---

[7] In addition, the language "or causation" had not yet been added to OCGA § 40-8-76.1 (d), see Ga. L. 1999, p. 276, § 1.

*also are proximate causes* of the death'"; and "'in the criminal context it *simply is not relevant* that the victim was negligent, unless the defendant's conduct did not substantially contribute to the cause of death.'" *Whitener*, 201 Ga. App. at 311 (citation omitted; emphasis supplied and in original).

Although the Court of Appeals in *Whitener* relied on cases involving seatbelt use from outside of Georgia to reach its holding, the legal principles set forth in those cases are also well established in Georgia law. Foremost among them is the principle that "[c]ontributory negligence, as such, has no place in the law of crime." *Cain v. State*, 55 Ga. App. 376, 377 (190 SE 371) (1937) (if the defendant's criminal negligence "is found to be the cause of the death, he is criminally responsible, whether or not the decedent's failure to use due care contributed to the injury"); see also id. at 382 (recognizing that the defendant would not be guilty if the negligent act of the deceased was the *sole* proximate cause of his death, as in the case of a self-inflicted wound or injury). "'A criminal trial for infraction of traffic laws does not involve such matters as the

21

relative diligence or negligence of parties to a collision, but concerns only whether or not the defendant on trial is guilty of the violation with which he is charged.'" *Payne v. State*, 138 Ga. App. 358, 359-360 (226 SE2d 152) (1976) (citation omitted). And in a criminal case where the defendant is charged with hit and run and vehicular homicide, the key question is whether the defendant's conduct proximately caused the victim's death. See *Hoffer v. State*, 192 Ga. App. 378, 383 (384 SE2d 902) (1989) (in vehicular homicide case, holding that the trial court did not abuse its discretion by excluding seatbelt evidence as irrelevant because the question for the jury was "not whether the death would or could have been made less likely by wearing a seatbelt," but whether the defendant "caused the death by running the red light") (citing *Wilson v. State*, 190 Ga. 824, 829 (10 SE2d 861) (1940)). Acknowledging all of these principles, the Court of Appeals has followed and quoted *Whitener* in multiple cases to hold that the use of a safety restraint is altogether irrelevant in determining causation in a criminal case. See *Baysinger v. State*, 257 Ga. App. 273, 273-274 (570 SE2d 593) (2002) (improper

placement by the child-victim's parents of the child's car seat "did not break the causal connection between the defendant's wrongful conduct and the child's serious injuries," and the evidence was therefore sufficient to support the defendant's conviction of serious injury by vehicle); *Fletcher v. State*, 307 Ga. App. 131, 132 (704 SE2d 222) (2010) (separate and apart from OCGA § 40-8-76.1 (d), affirming the exclusion of "evidence that the victim's failure to wear a seat belt was an intervening cause of his death"); *Hartzler v. State*, 332 Ga. App. 674, 681 (774 SE2d 738) (2015) (separate and apart from OCGA § 40-8-76.1 (d), holding that a jury instruction that any negligence on the part of the victim was irrelevant was not error in a vehicular homicide case in which there was evidence that the victim failed to wear a seatbelt).  See also *Hammill v. State*, 327 Ga. App. 580, 584 (758 SE2d 336) (2014) (quoting *Baysinger*); *McGrath v. State*, 277 Ga. App. 825, 829 (627 SE2d 866) (2006) (quoting *Baysinger*); *Miller v. State*, 236 Ga. App. 825, 829 (513 SE2d 27) (1999) (quoting *Cain*).

Despite this body of case law from our Court of Appeals, the

issue presented here — namely, whether a victim's alleged negligence in not wearing a seatbelt is relevant to causation in a criminal case — is one of first impression for this Court. To reach the answer, we, like the Court of Appeals, look to Georgia law on proximate causation. It is well established that proximate cause in a criminal case "exists when the accused's act or omission played a substantial part in bringing about or actually causing the victim's injury or damage and the injury or damage was either a direct result or a reasonably probable consequence of the act or omission." *Rivers v. State*, 296 Ga. 396, 404 (768 SE2d 486) (2015) (citation and punctuation omitted). See also *Jackson*, 287 Ga. at 648-649. In homicide cases, an unlawful injury inflicted by the defendant is deemed the proximate cause of death whenever "the injury itself constituted the sole proximate cause of the death," "the injury directly and materially contributed to the happening of a subsequent accruing immediate cause of the death," or "the injury materially accelerated the death, although proximately occasioned by a pre-existing cause." *Stribling v. State*, 304 Ga. 250, 253 (818

SE2d 563) (2018) (quoting *Wilson*, 190 Ga. at 829 (punctuation omitted)). See also *Jackson*, 287 Ga. at 649 (quoting *Wilson*, 190 Ga. at 829). "Proximate cause thus imposes liability for the reasonably foreseeable results of a criminal act if there is no independent and unforeseen intervening cause." *Stribling*, 304 Ga. at 253. See also *Jackson*, 287 Ga. at 651, 654. This principle applies in vehicular homicide cases, *Ogilvie*, 292 Ga. at 11, and is deeply embedded in Georgia law. See, e.g., *Menzies v. State*, 304 Ga. 156, 161 (816 SE2d 638) (2018); *Robinson v. State*, 298 Ga. 455, 458 (782 SE2d 657) (2016); *Wilson v. State*, 297 Ga. 86, 87 (772 SE2d 689) (2015).

Here, application of those well-established legal principles leads to the conclusion that a victim's failure to wear a seatbelt in a case like this is not an intervening cause and would not prevent a car accident from constituting the proximate cause of death of a passenger in a car involved in the accident. Indeed, contrary to Mondor's characterizations on appeal, a car passenger's failure to wear a seatbelt is not, generally speaking, an intervening cause at all. Instead, in most instances it is better described as a pre-existing

25

or concurrent proximate cause, see *Whitener*, 201 Ga. App. at 311 (failure to wear a seatbelt better described as a "condition precedent" to a car accident or as "contribut[ing] to the death of a victim"), especially given that failure to wear a seatbelt generally only combines with other contributing causes of an accident and does not independently cause death or injury, see *Stribling*, 304 Ga. at 253; *Whitener*, 201 Ga. App. at 311. So long as the car accident was at least *a* proximate cause of the victim's death — which means that it may be an *additional* proximate cause — the defendant may still be held criminally responsible. See *Stribling*, 304 Ga. at 253; *Whitener*, 201 Ga. App. at 311; *Cain*, 55 Ga. App. at 377. We therefore hold that evidence of a victim's failure to wear a seatbelt generally is not relevant evidence of causation in criminal cases.[8] Put differently,

---

[8] This conclusion is consistent with the weight of authority in other jurisdictions. At least as of 2004, one appellate court noted that "the jurisdictions that have considered this issue . . . have uniformly concluded that the victim's failure to wear a seatbelt does not amount to an intervening cause." *People v. McAfee*, 104 P3d 226, 230 (Colo. App. 2004) (collecting cases from 13 other states including Georgia). And "a victim's failure to wear a seatbelt is not sufficient to supersede a criminal defendant's conduct in causing the victim's injuries or death." *Allen v. State*, 43 P3d 551, 566 (Wyo. 2002) (collecting cases). See also, e.g., *State v. Stewart*, 759 A2d 142, 148 (Conn. App.

26

but again in the context of this case: if the jury in a criminal trial were to determine that Mondor caused an accident that was a substantial contributing cause of Braland's death, then the causation element of hit and run and vehicular homicide, as set forth in OCGA §§ 40-6-270 (b) and 40-6-393 (b), has been met irrespective of whether Braland's failure to wear a seatbelt was also a contributing factor or even another proximate cause of his death.[9] See *Stribling*, 304 Ga. at 253; *Whitener*, 201 Ga. App. at 311; *Cain*, 55 Ga. App. at 377. Evidence of Braland's failure to wear a seat belt is thus irrelevant to causation because it does not tend to make it

---

2000) (collecting cases); *State v. Buckley*, 78 A3d 958, 968-970 (N.J. 2013). The rationale of those cases is that contributory negligence is not a defense in a criminal prosecution; that the victim's failure to wear a seatbelt cannot amount to an intervening or superseding cause because it is reasonably foreseeable that some potential victims of vehicular collisions may not be wearing a seatbelt; and that for a cause to relieve a defendant of criminal responsibility, it must do more than supply a concurring or contributing cause of death or combine with the defendant's act to cause the victim's death. *McAfee*, 104 P3d at 230; *Allen*, 43 P3d at 566; *Stewart*, 759 A2d at 148-149.

[9] To be sure, such seatbelt evidence may well be relevant in a civil case to the issue of contributory negligence, see *Whitener*, 201 Ga. App. at 311; *Cain*, 55 Ga. App. at 382, assumption of risk, or apportionment of damages. But for the reasons explained above, the same is not true of the issue of causation in a criminal case.

either more or less probable that an accident caused by Mondor proximately caused Braland's death in violation of OCGA §§ 40-6-270 (b) and 40-6-393 (b), and because it is irrelevant, it is inadmissible. See OCGA § 24-4-401 ("the term 'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"); OCGA § 24-4-402 ("Evidence which is not relevant shall not be admissible."). We accordingly affirm the trial court's exclusion of the seatbelt-use evidence in this case based on principles of proximate cause and decline to address whether OCGA § 40-8-76.1 (d) applies in this, or in any, criminal case. Finally, because we affirm the trial court's evidentiary finding, we need not reach Mondor's argument that OCGA § 40-8-76.1 (d) is unconstitutional as applied to him.

3. Mondor also contends that "OCGA §§ 40-6-270 and 40-6-393 (b) are unconstitutionally void for vagueness because the language of OCGA § 40-6-270 [(a)] fails to define key terms as part of its requirement that a driver 'remain at the scene of the accident until

28

fulfilling the requirements of this subsection'" and "because they present a confusing snarl of causation that no ordinary citizen or law enforcement officer could ever hope to untangle and understand." But neither the trial court's written order nor any oral ruling addressed or resolved the former claim, and we do not reach constitutional questions that the trial court has not considered and distinctly ruled on. *State v. Chulpayev*, 296 Ga. 764, 784 (770 SE2d 808) (2015) ("This Court will not rule on a constitutional question unless it clearly appears in the record that the trial court distinctly ruled on the point." (citation and punctuation omitted)). See also *Nathans v. Diamond*, 282 Ga. 804, 808 (654 SE2d 121) (2007) ("Because the trial court's discussion at the hearing and its written order focus on [other issues], and because neither the trial court's discussion nor its written order mention the other constitutional issues, it does not appear that those other issues were distinctly ruled on by the trial court.").

The trial court also did not rule on the vagueness challenge that is directed to the statutory causation requirements. Instead,

the trial court's written order merely acknowledged Mondor's request for an exact definition of the word "cause" in OCGA § 40-6-393 and then expressly "decline[d] to set a definition of the word 'cause' as used in OCGA § 40-6-393 prior to trial." Mondor points to certain statements the trial court made at the motions hearing for the proposition that the court did rule on this constitutional issue, see *Jenkins v. State*, 284 Ga. 642, 643-644 (670 SE2d 425) (2008) (a distinct ruling on a constitutional question may be oral and not reduced to writing), but those statements merely discuss different potential meanings of the word "cause" and conclude with the statement "cause means cause." Moreover, even if this did amount to an oral ruling on the meaning of "cause," the written order declining to make such a ruling would control. See *Mondy v. Magnolia Advanced Materials*, 303 Ga. 764, 772 (815 SE2d 70) (2018) ("[A]ny discrepancy between the oral pronouncement and the written ruling will be resolved in favor of the written judgment."). Because the trial court did not distinctly rule on either of Mondor's vagueness challenges, he has presented nothing for this Court to

review.  *Chulpayev*, 296 Ga. at 784; *Bell*, 293 Ga. at 684.

*Judgment affirmed in Case No. S19X0210. Judgment reversed in Case No. S19A0209.  All the Justices concur.*

Decided June 28, 2019.

OCGA § 40-8-76.1 (d); constitutional question. Cobb Superior Court. Before Judge Howe, Senior Judge.

*D. Victor Reynolds, District Attorney, Amelia G. Pray, Patricia G. Hull, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellant.

*Scott P. Semrau*, for appellee.